WESTERN UNION TEL. CO. v. CITY COUNCIL OF CHARLESTON et al.

POSTAL TELEGRAPH CABLE CO. v. SAME.

(Circuit Court, D. South Carolina. June 21, 1893.)

1. TELEGRAPH COMPANIES — GOVERNMENTAL AGENCIES — SUIT IN FEDERAL COURTS—TAXATION.

A telegraph company which has accepted the provisions of the act of July 24, 1866, "to aid in the construction of telegraph lines," thereby becomes an agent of the federal government, and is entitled to maintain a suit in the federal courts to enjoin the collection of a state tax, which it alleges will imperil its existence, though the amount in controversy is not sufficient to sustain the jurisdiction of such courts on the ground of diverse citizenship.

2. SAME—TAXATION—INTERSTATE COMMERCE.

A city ordinance provided that "telegraph companies or agencies, each, for doing business within the city of Charleston, and not including business done to or from points without the state, and not including any business done for the government of the United States," should pay an annual license fee of $500. *Held,* that this imposed a tax, and was valid, because it expressly exempts from its operation interstate and governmental business.

In Equity. These were bills filed by the Western Union Telegraph Company and the Postal Telegraph Cable Company against the city council of Charleston and others for an injunction against the collection of taxes. Bills dismissed.

Smythe & Lee and Mordecai & Gadsden, for complainants.
Charles Inglesby, for defendants.

SIMONTON, District Judge. These two cases, covering precisely the same averments and issues, were heard together. The complainants are corporations, each organized under the laws of New York. Each of them has an office in the city of Charleston, and each is engaged in sending messages by wire to points in the United States, to points outside of this state, and in other countries on this continent, and is connected by cable with the old world. Each of them is thus an instrument of and engaged in interstate commerce. Besides this, each of them, having its lines over the post roads, highways, and railroads in the city of Charleston, state of South Carolina, and in others of the United States, has accepted the provisions of the act of congress approved 24th July, 1866, to aid in the construction of telegraph lines. By this action the company so accepting puts its line at the service of the United States for postal, military, and other purposes, and gives precedence to its messages over all other business. It thus becomes an agent of the government. The bills, having made statements to this effect, proceed to say that the city council of Charleston, assuming to act under an act of the general assembly of South Carolina, passed an ordinance to regulate licenses for the year 1892; that by

this ordinance all persons engaged in business of the kinds thereinafter set forth, as a condition precedent for carrying on such business, are required to prepare a statement for the city assessor, each giving his name, place of business, and amount of business for the fiscal year for the purpose of assessment of the license tax; that, if he fail so to do, the city assessor shall proceed to assess him the amount provided in the ordinance, and to add thereto a penalty of 50 per cent.; that he shall report this to the city treasurer, who shall then issue his warrant for the collection of the same, and place the same in the hands of the city sheriff for distress or levy, adding 5 per cent. for his fees; that each of the complainants decided not to make, and in fact did not make, any such statement, or apply for such license, whereupon the city assessor assessed each of them $500, and added thereto the penalty of 50 per cent., and reported the same to the city treasurer, who issued thereon his warrant, and placed the same in the hands of the city sheriff, who now threatens to levy upon the property of the telegraph companies. Each complaint avers that the demand for this license and penalty is illegal and void; that the mode of enforcing the demand will interfere with and destroy the business of the company, rendering it incapable of performing its functions as an agent of the government or an instrument of interstate commerce, and prays an injunction. A temporary injunction was issued. The defendant filed an answer. At the hearing, a motion was made to dismiss the bills for want of jurisdiction, the amount in controversy not exceeding $2,000, besides interest and costs. To this motion complainants reply that each of them is a government agent of the United States, and, as such, entitled to seek relief in this court, without regard to the amount in controversy; and that the amount in controversy does exceed the limit prescribed by the act of congress, and thus the diversity of citizenship would sustain the jurisdiction. This motion, like a demurrer, admits, for the purposes of the motion, the allegations of the bill. As agencies of the government, these companies, in all matters affecting their existence as such agents, have a right to come into this court, without regard to the amount in controversy. Yardley v. Dickson, 47 Fed. Rep. 835; U. S. v. Shaw, 39 Fed. Rep. 435. It would seem also that the jurisdiction can be maintained on the other ground. The value of the object to be gained fixes the amount in controversy for jurisdictional purposes. Fost. Fed. Pr. § 16. The object to be gained here is exemption from a license tax of $500 per annum. An injunction in a case like this must be of much greater value to the complainant than the sum immediately demanded. Symonds v. Greene, 28 Fed. Rep. 834; Whitman v. Hubbell, 30 Fed. Rep. 81; Railway Co. v. Kuteman, 54 Fed. Rep. 552; Railroad Co. v. Ward, 2 Black, 485. Each bill alleges irreparable injury in the destruction of its business. The right to conduct this business is alleged to be involved, and a valuable franchise, it is said, is threatened. The demurrer to the jurisdiction is overruled. The provisions of the ordinance to be construed are those requiring a license to be taken out by any person, firm, company, or corporation engaged or engaging in

business in the city of Charleston, upon statement made of the amount of the business, upon which the city assessor shall assess the proper license tax; also the imposition of a penalty for each and every offense on such as fail to comply with the ordinance. The imposition of this penalty on each of the complainants, based on this item in the ordinance, is as follows:

"35 telegraph companies or agencies, each, for doing business exclusively within the city of Charleston, and not including any business done to or from points without the state, and not including any business done for the government of the United States, its officers or agents, $500."

The first question which rises naturally is, is this a license, a condition upon the performance of which the right to do business depends, and to which the right of doing business is referred, or is it a tax? This question is answered in Home Ins. Co. v. City Council, 93 U. S. 122. The state of Georgia required all foreign insurance companies, as a condition precedent for doing business in that state, to get a certificate from the comptroller general, to be issued upon a sworn statement of certain facts required in the act. The Home Insurance Company of New York had such a certificate. The city of Augusta passed an ordinance requiring all insurance companies to take out a license annually, and pay a certain sum of money therefor. The Home Insurance Company disputed the validity of this ordinance, and denied the necessity for the license. The counsel for the company, leaders of the New York bar, contended before the supreme court that the term "license" means "permission" or "authority;" that it is a right given by some competent authority to do an act which without such authority would be illegal; that, having the right to do the business of insurance from its charter, and the permission to do its business in the state of Georgia from the act of its legislature, a license from the city of Augusta was unnecessary, and its requirement unlawful. The supreme court replied to this argument, and overruled it. They held that the payment required was a special tax, although called a "license," levied in the mode prescribed; that the penalty was a mode of enforcing its payment; and that the license, when issued, was only a receipt for the tax. In Wiggins Ferry Co. v. City of East St. Louis, 107 U. S. 376, 2 Sup. Ct. Rep. 257, the same court, discussing the right of a city to require a license from a ferryman whose ferries crossed a navigable stream dividing two states, take the same view, and sustained the tax against the contention that it interfered with interstate commerce. "The exaction of a license fee is an ordinary exercise of the police power by a municipal corporation." "The power of the state to authorize any city within its limits to enforce a license tax on trades or callings generally, especially those which are 'quasi public,' cannot be disputed." "Whether a license fee is exacted under the power to regulate or the power to tax is a matter of indifference, if the power to do either exists." In South Carolina the same point is decided, and the license tax sustained, in State v. Hayne, 4 S. C. 403; State v. Columbia, 6 S. C. 1.

This being a tax, are these agents of the government and in-

struments of interstate commerce subject to the tax? The tax is one for business done exclusively within the city of Charleston. The business is the receiving and the sending of messages by wire. As this is the controlling initial point of messages sent, and the concluding, consummating point of messages delivered, these words, without qualification, cover all messages sent and received. A shipping and commission merchant may be said to do his business exclusively in Charleston, when he ships goods from and receives goods at this port, although, to complete such business, the goods are carried to and from other points. The draughtsman of this ordinance knew, however, that the business done by these companies between points without this state and the city of Charleston was protected from taxation by the interstate commerce law, (W. U. Tel. Co. v. Texas, 105 U. S. 460;) and that, in all business done for the government its agent was protected from taxation, (W. U. Tel. Co. v. Alabama State Board of Assessment, 132 U. S. 473, 10 Sup. Ct. Rep. 161.) So this part of the ordinance carefully excludes any such attempt, "not including any business done to or from points without the state, and not including any business done for the government of the United States, its officers or agents." But here its exemption ends. Although a telegraph company is an instrument of commerce, and an agent of the United States, "its property in the state is subject to taxation as is other property, and it may immediately be taxed in a proper way on account of its occupation and business." Waite, C. J., in W. U. Tel. Co. v. Texas, supra. Mr. Justice Miller, delivering the opinion of the court in W. U. Tel. Co. v. Alabama State Board of Assessment, 132 U. S. 473, 10 Sup. Ct. Rep. 161, thus sums up the law on this subject as formulated in decisions of the supreme court:

"The principle in regard to telegraph companies which have accepted the provisions of the act of congress 24th July, 1866, is that they shall not be taxed by the authorities of any state for any messages or receipts from messages from points within the state to points without the state, or from points without the state to points within the state, but that such taxes can be levied upon all messages carried and delivered exclusively within the state."

Precisely the same principle exists with regard to another instrument of commerce,—express companies. Express Co. v. Seibert, 142 U. S. 350, 12 Sup. Ct. Rep. 250. The case of W. U. Tel. Co. v. Attorney General, 125 U. S. 530, 8 Sup. Ct. Rep. 961, is on a line with these decisions. The license tax in this case is not unreasonable, nor will its payment imperil or tax the existence of either of the companies, or its business in this city.

The temporary injunction heretofore granted is dissolved in each case, the motions for injunction refused, and each bill is dismissed, with costs.