## TELEGRAPH COMPANY *v.* TEXAS.

1. In respect to its foreign and inter-state business, a telegraph company is, as an instrument of commerce, subject to the regulating power of Congress, and, if it accepts the provisions of title 65 of the Revised Statutes, it becomes an agent of the United States, so far as the business of the government is concerned.

2. Where it has accepted those provisions, State laws, so far as they impose upon it a specific tax on each message which it transmits beyond the State, or which an officer of the United States sends over its lines on public business, are unconstitutional.

ERROR to the Supreme Court of the State of Texas.

The Western Union Telegraph Company is a New York corporation engaged in the business of transmitting telegrams at fixed rates of compensation. Its lines extend into and through most of the States and Territories of the United States, and to Washington, in the District of Columbia. It has availed itself of the privileges and subjected itself to the obligations of title 65 of the Revised Statutes relating to telegraph companies, and its lines connect with those owned and established by the government of the United States for public purposes. It has one hundred and twenty-five offices in the State of Texas, and is in close communication with other telegraph companies doing business in this country and abroad.

By sect. 1 of art. 8 of the Constitution of Texas the legislature is authorized to "impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing business in the State;" and by art. 4655 of the Revised Statutes, enacted under that provision, every chartered telegraph company doing business in the State is required to pay a tax of one cent for every full-rate message sent, and one-half cent for every message less than full rate. This tax is to be paid quarterly to the comptroller of the State on sworn statements made by an officer of the company. In addition to this, taxes must be paid on the real and personal property of the company in the State.

Between Oct. 1, 1879, and July 1, 1880, the company sent over its lines from its offices in Texas 169,676 full rate, and

100,408 less than full. rate, messages.   A large portion of them were sent to places outside of the State, and by the officers of the government of the United States on public business.   The company neglected to pay the tax imposed, and a suit was brought in one of the courts of the State for its recovery.   In defence it was insisted that the law imposing the tax was in conflict with the Constitution and laws of the United States, and, therefore, void.   The Supreme Court of the State, on appeal, sustained the law, and directed a judgment against the company for the full amount claimed, allowing no deductions for messages sent out of the State, or by government officers on government business.   To reverse that judgment this writ of error was sued out.

The case was argued by *Mr. Wager Swayne* for the plaintiff in error. -

*Mr. J. H. McLeary*, Attorney-General of Texas, and *Mr. Philip Phillips* appeared for the defendant in error.

: The following is an abstract of their argument : —

The act of Congress "to aid in the construction of telegraph lines" confers the right to construct them over the public domain and along the military or post roads of the United States, and for this purpose authorizes the companies to use stone, lumber, and other materials found on the public land.   It then provides that as to the companies acting under the provisions of the act, the messages sent by the government " shall have priority over all other business, at such rates as the Postmaster-General shall annually fix," the government reserving the right to purchase their lines. .

This company, by accepting the act, was, therefore, bound to give the messages of the government priority over all other business, at such rates as should be determined by the Postmaster-General ; but it incurred no other obligation.   The act contains no provision inconsistent with the exercise of the taxing power of the States, and if Texas has the right to impose the tax in question on a company that had not accepted the act, this company cannot by accepting it elude that power.

The use of the line by the government for the transmission of messages does not constitute the company such an agency as to exempt it from State taxation.   *Osborn* v. *Bank of the*

*United States*, 9 Wheat. 738; *Thomson* v. *Pacific Railroad*, 9 Wall. 579; *Railroad Company* v. *Peniston*, 18 id. 5.

Is the act under consideration void as being in conflict with the power vested in Congress to regulate commerce among the States?

A State, while it cannot regulate either foreign or interstate commerce, may do many things which more or less affect it. It may tax a vessel used in commerce, and the stages employed in the transportation of the mail. But this does not regulate commerce or the conveyance of the mail. And yet, in both instances, the tax on the property in some degree affects its use. This tax may enhance the cost of messages, many of which are transmitted beyond the State, but the statute imposing it is not an attempted regulation of commerce.

If the tax had been a specific sum for carrying on the business of telegraphy, or on an assessment of the property of the company, or upon its gross receipts, no argument in keeping with the decisions of this court could successfully assail its validity.

We then have a question touching the relation of the States to the general government involving the vital power of taxation, reduced to an inquiry into the mere phraseology of the act levying the tax.

Let it be admitted that the tax is on the message and not on the company. Are telegraph messages to be regarded as articles of commerce passing through the State? Many of them doubtless relate to commercial transactions, as an order to buy or an order to sell; but such an order is not an article of commerce, nor is it property in the sense we are now considering it. The tax is not, however, laid on the message, but on the company for the number of messages sent. It is, by the very terms of the act, payable quarterly, on the statement of the company, so that it was collected long after they were sent. It is, in effect, a tax upon the company's quarterly business.

In sustaining the tax in *State Tax on Railway Gross Receipts* (15 Wall. 284), the court said: " The tax is not levied until the expiration of each half-year, and until the money received for freights and other sources of income has actually

come into the company's hands. Then it has lost its distinc-
tive character as freight by having become incorporated into
the general mass of the company's property." If the tax in
this case had been confined to messages between points within
the State, no argument could be made to invalidate the act.
This being so, as the act makes no discrimination, its legality
cannot be impeached on the ground that a portion of the mes-
sages were sent through and beyond the limits of the State.

Osborne v. Mobile (16 Wall. 479) is decisive of this case.
It was tried on an agreed statement of facts, from which it
appears that the express company was engaged in a business
extending beyond the limits of the State in carrying merchan-
dise of every kind, including articles of commerce, between
different States, as well as goods and merchandise from foreign
countries, and articles imported in the original packages; that
the company was at times employed by the officials of the
United States in transporting the funds of the government;
that the company, which was incorporated by the State of
Georgia, was subject to and had paid city and county taxes on
its property, and the tax levied by the United States.

The tax complained of as unconstitutional was levied by
virtue of a city ordinance, which provided that "every ex-
press company, or railroad company, who shall do business in
the city of Mobile, and whose business extends beyond the
limits of the State, shall pay an annual license of $500, if
within the limits of the State $100, and if within the limits
of the city $50." The act, it was maintained, was void be-
cause of the nature of the business on which the tax was
imposed. The Chief Justice delivered the unanimous opinion
of the court sustaining a license tax for the privilege of doing
an express business, the company being engaged in inter-state
commerce, notwithstanding the record showed that the com-
pany was taxed upon its property. That case was decided at
the term when Case of the State Freight Tax and State Tax
on Railway Gross Receipts were disposed of. The point of
decision in each is referred to, and the decision thus con-
cludes:—

"The license tax was upon a business carried on within
the city of Mobile. The business licensed included transpor-

tation beyond the limits of the State, or rather the making of contracts within the State for such transportation beyond it. It was in reference to this feature of the business that the tax was in part imposed; but it was no more a tax upon inter-state commerce than a general tax on drayage would be because the licensed drayman might sometimes be employed in hauling goods to vessels to be transported beyond the limits of the State."

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

In *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.* (96 U. S. 1), this court held that the telegraph was an instrument of commerce, and that telegraph companies were subject to the regulating power of Congress in respect to their foreign and inter-state business. A telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. They do their transportation in different ways, and their liabilities are in some respects different, but they are both indispensable to those engaged to any considerable extent in commercial pursuits.

Congress, to facilitate the erection of telegraph lines, has by statute authorized the use of the public domain and the military and post roads, and the crossing of the navigable streams and waters of the United States for that purpose. As a return for this privilege those who avail themselves of it are bound to give the United States precedence in the use of their lines for public business at rates to be fixed by the Postmaster-General. Thus, as to government business, companies of this class become government agencies.

The Western Union Telegraph Company having accepted the restrictions and obligations of this provision by Congress, occupies in Texas the position of an instrument of foreign and inter-state commerce, and of a government agent for the transmission of messages on public business. Its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its

occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the State, or sent by public officers on the business of the United States.

In *Case of the State Freight Tax* (15 Wall. 232) this court decided that a law of Pennsylvania requiring transportation companies doing business in that State to pay a fixed sum as a tax "on each two thousand pounds of freight carried," without regard to the distance moved, or charge made, was unconstitutional, so far as it related to goods taken through the State, or from points without the State to points within, or from points within to points without, because to that extent it was a regulation of foreign and inter-state commerce. In this the court but applied the rule, announced in *Brown* v. *Maryland* (12 Wheat. 419), that where the burden of a tax falls on a thing which is the subject of taxation, the tax is to be considered as laid on the thing rather than on him who is charged with the duty of paying it into the treasury. In that case, it was said, a tax on the sale of an article, imported only for sale, was a tax on the article itself. To the same general effect are *Welton* v. *State of Missouri*, 91 U. S. 275; *Cook* v. *Pennsylvania*, 97 id. 566; and *Webber* v. *Virginia*, 103 id. 344. Taxes upon passenger carriers of a specific amount for each passenger carried were held to be taxes on the passengers, in *Passenger Cases*, 7 How. 283; *Crandall* v. *State of Nevada*, 6 Wall. 35; and *Henderson* v. *The Mayor*, 92 U. S. 259. Taxes on vessels according to measurement, without any reference to value, were declared to be taxes on tonnage. *State Tonnage Cases*, 12 Wall. 204; *Peete* v. *Morgan*, 19 id. 581; *Cannon* v. *New Orleans*, 20 id. 577; and *Inman Steamship Co.* v. *Tinker*, 94 U. S. 238.

The present case, as it seems to us, comes within this principle. The tax is the same on every message sent, and because it is sent, without regard to the distance carried or the price charged. It is in no respect proportioned according to the business done. If the message is sent the tax must be paid, and the amount determined solely by the class to which it belongs. If it is full rate, the tax is one cent, and if less than

full rate, one-half cent. Clearly if a fixed tax for every two thousand pounds of freight carried is a tax on the freight, or for every measured ton of a vessel a tax on tonnage, or for every passenger carried a tax on the passenger, or for the sale of goods a tax on the goods, this must be a tax on the messages. As such, so far as it operates on private messages sent out of the State, it is a regulation of foreign and inter-state commerce and beyond the power of the State. That is fully established by the cases already cited. As to the government messages, it is a tax by the State on the means employed by the government of the United States to execute its constitutional powers, and, therefore, void. It was so decided in *McCulloch* v. *Maryland* (4 Wheat. 316) and has never been doubted since.

It follows that the judgment, so far as it includes the tax on messages sent out of the State, or for the government on public business, is erroneous. The rule that the regulation of commerce which is confined exclusively within the jurisdiction and territory of a State, and does not affect other nations or States or the Indian tribes, that is to say, the purely internal commerce of a State, belongs exclusively to the State, is as well settled as that the regulation of commerce which does affect other nations or States or the Indian tribes belongs to Congress. Any tax, therefore, which the State may put on messages sent by private parties, and not by the agents of the government of the United States, from one place to another exclusively within its own jurisdiction, will not be repugnant to the Constitution of the United States. Whether the law of Texas, in its present form, can be used to enforce the collection of such a tax is a question entirely within the jurisdiction of the courts of the State, and as to which we have no power of review

The judgment of the Supreme Court of Texas will be reversed, and the cause remanded with instructions to reverse the judgment of the District Court, and proceed thereafter as justice may require, but not inconsistently with this opinion; and it is

*So ordered.*