THE CHICAGO & ATCHISON BRIDGE COMPANY v. THE PACIFIC MUTUAL TELEGRAPH COMPANY, et al.

EMINENT DOMAIN; *Condemnation; Injunction.* A telegraph company, in the exercise of eminent domain, instituted a proceeding to condemn and appropriate so much of a bridge as was necessary to support a line of magnetic telegraph proposed to be built, and for the construction, maintenance and operation of the same. The bridge was built in pursuance of state and national legislation, and spans the Missouri river at Atchison, Kansas, where the river is navigable, and where it divides the states of Kansas and Missouri. The company owning the bridge, claiming that the condemnation proceeding was without authority of law, brought an action to enjoin the same, and to prevent any interference with the bridge. *Held,* That before the telegraph company can construct its line at the point named, it must file with the postmaster general a written acceptance of the restrictions and obligations imposed by congress in an "Act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," approved July 24, 1866, and that the failure to file such acceptance is fatal to the condemnation proceeding.

*Error from Atchison District Court.*

PROCEEDING brought in this court by *The Chicago & Atchison Bridge Company* to reverse the ruling of the district court at the June Term, 1886, dissolving a temporary injunction which had been granted against *The Pacific Mutual Telegraph Company,* and others. The opinion states the facts.

*Everest & Waggener,* for plaintiff in error.

*Jackson & Royse,* for defendants in error.

8 — 36 KAS.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding is brought by the Chicago & Atchison Bridge Company to reverse the ruling of the district court of Atchison county dissolving a temporary injunction which had been allowed against The Pacific Mutual Telegraph Company, and also against Churchill J. White, E. G. Armsby, and Ed. W. Howe, who had been appointed commissioners in a condemnation proceeding. On the 21st day of May, 1886, The Pacific Mutual Telegraph Company presented a petition to the judge of the district court of Atchison county, asking the appointment of three commissioners to appraise the value of the property proposed to be taken, and to assess the damage that the bridge company might sustain by the appropriation of "so much of the railroad and highway bridge which spans the Missouri at the city of Atchison, and which extends from the west bank of said river in the state of Kansas to the east bank thereof in the state of Missouri, as may from time to time be deemed necessary for the construction, maintenance and operation of a line of magnetic telegraph, and to erect poles, piers, abutments, arms, brackets, wires, and such other necessary fixtures for a magnetic telegraph as may from time to time be deemed necessary; and after the same is erected, and when necessary to go upon said property to repair the said line of magnetic telegraph."

The petition gave the details of the plan and materials to be used in the construction of the line, and the manner by which the wires would be attached to and supported upon the bridge. The application of the telegraph company was granted, and commissioners were appointed, who gave notice that at a stated time they would, in accordance with the prayer of the petition, proceed to make appraisement of the property to be taken, and to assess the damages of the bridge company by reason of the construction of the line on the structure of the bridge company, when the present action was begun and the temporary injunction allowed. On the motion of the

defendants, the temporary injunction was vacated and discharged, and this ruling is the subject of complaint.

The bridge to which the telegraph company proposes to attach its wires, is owned by The Chicago & Atchison Bridge Company, a consolidated company existing under the laws of Kansas and of Missouri. It was built across the Missouri river at the city of Atchison, where the river is navigable, and where it divides the states of Kansas and Missouri. It appears that under an act of congress authorizing the construction of the Pacific railroad system, there was granted to certain railroads the right and franchise to construct a bridge over the Missouri river at Atchison, Kansas, and the manner of its construction was therein provided for. (13 U. S. Stat. at Large, ch. 216, § 9.) Afterward the privileges, rights and franchises granted by that act to the railroad companies for the building of the bridge were transferred to the bridge company upon the condition that the bridge should be constructed in the manner provided by congress, and the bridge company accepted the transfer, assumed the obligations of the railroad companies, and thereafter constructed and completed the bridge in accordance with the terms and conditions of the act of congress and of the assignment. The act of congress required the bridge to be built with suitable and proper draws for the passage of steamboats, and in such a manner as not to impair the usefulness of the river for navigation to any greater extent than such structures of the most approved character necessarily do. The bridge was built with a draw-span, and the telegraph company claimed that the manner in which it proposed to construct and attach its line to the bridge would not interfere with the turning of the draw-span, nor with the performance of the duties owing by the bridge company to the general government. The bridge company denies the validity of the condemnation proceeding, and insists that for several reasons the injunction should have stood and been made perpetual. It is claimed that the bridge is already devoted to a public purpose, and cannot be taken for another and different purpose than that contemplated by the charter and the act of con-

gress under which it was built.    It is urged that if the bridge is
burdened with the lines of the telegraph company, the use and
purpose for which the bridge was built will be impaired and
destroyed, and the plaintiffs will be obstructed in discharging
the obligation which it owes to the federal government.    It is
also said that no necessity exists for the building of its line upon
this bridge; and among other objections and complications,
the plaintiff suggests that if the defendant acquires the right
in the bridge which it seeks, and it should become necessary
to remodel the entire structure, the defendant might interfere
and prevent it from being done.    Counsel for the bridge com-
pany say that—

"Such condemnation would in any event make a joint pro-
prietorship between the bridge company and the telegraph
company, with paramount right in neither.    In case of neces-
sary repairs of the bridge, how shall the necessary expense of
such repairs be paid ?    Who shall determine the necessity of
such repairs ?    If the telegraph company gets the right to ap-
propriate so much of said bridge from time to time as it may
deem necessary, this is a perpetual right, and in fact if not in
law, constitutes ownership—at least proprietorship.    In that
event, which company shall pay the taxes ?  If both, in what
proportion ?    Who shall insure the bridge ?    If the telegraph
company has an insurable interest, what is its proportion ?"

We need not decide in this case whether this and other
telegraph and telephone companies can place their wires and
fixtures upon a structure which may not have been built with
reference to supporting such burdens, and which is already
devoted to a specific public use.    We also pass over the ques-
tion of necessity, and shall not undertake to determine whether
the characteristics of the country in and about Atchison re-
quire the use of the plaintiff's bridge in order to afford the
telegraph company an entrance to the state and city ; or whether
the telegraph company can by the building of posts or piers
in the river or upon the banks, or upon some of the islands
of the river, gain an entrance into the state without interfer-
ence with property in public use.    These and other questions
that have been presented are purposely passed over, for the

reason that a preliminary and essential step which, in any event, is necessary to the validity of the condemnation proceeding, has been omitted. It is admitted that the Missouri river is a navigable one; and under the commercial clause of the federal constitution, the power of congress over such rivers and in regard to the bridging of the same is supreme. It will also be conceded that the telegraph is an instrumentality of commerce; and under the same constitutional provision it, like other commercial agencies engaged in interstate traffic, comes within the protection and regulating power of congress. (*Telegraph Company v. Texas*, 105 U. S. 460.) Upon the subject of telegraphs, congress has taken affirmative action, and has given authority and provided how and upon what conditions telegraph lines may be constructed over and across the navigable streams and waters of the United States. (14 U. S. Stat. at Large, ch. 120.) Section 4 of that act provides that —

"Before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file their written acceptance with the postmaster general of the restrictions and obligations required by this act."

The defendant is seeking to avail itself of the privileges of this act by constructing a telegraph line from the state of Missouri into the state of Kansas over a navigable stream, without complying with its requirements. The obligations and restrictions to be accepted are important in their character, one of which is that the telegraph line shall be so constructed and operated as not to obstruct the navigable streams and waters, or interfere with the travel on the military and post-roads. Congress has intervened, and has seen fit to make the filing of a written acceptance an essential prerequisite to the building of a telegraph line over a navigable stream, and to the enjoyment of the privileges conferred by that act, and its authority is paramount. The petition of the telegraph company in the condemnation proceeding does not show that the written acceptance was filed, and in argument counsel for the telegraph company practically concede that it was not

done; and hence we must hold that the proceedings were invalid, and that the injunction should have been continued.

The ruling of the court in vacating the temporary injunction theretofore allowed will be reversed, and the cause remanded for such further proceedings as may properly be taken.

All the Justices concurring.