# Williams *v.* City of Talladega.

### *Violating City Ordinance.*

(Decided Dec. 21, 1909.—51 South. 330.)

1. *Courts; Federal Constitutional Question; Conclusiveness.*—The decision of the United States Supreme Court on the questions of Federal Constitutional law is conclusive on the state courts.

2. *Licenses; Power of State to Levy; Federal Government Instrumentalities; Telegraph Lines.*—A foreign telegraph company which has accepted the provisions of the United States Revised Statutes, sections 5263-5268, is subject to a license tax by the state on its intra-state business.

[Williams v. City of Talladega.]

3. *Same; Occupation Tax; Reasonableness.*—An ordinance of a city imposing a tax on telegraph companies for the privilege of transmitting messages by electricity between points within the state is valid, although applied to a foreign telegraph company which has accepted the provisions of the United States Revised Statutes, sections 5263-5268, for if the government messages are transmitted at a reduced rate and this has a material effect upon the company's business, such may be taken into account in passing on the reasonableness of the license tax.

4. *Same; Occupation Tax; Reasonableness.*—A municipal ordinance imposing a tax of $100.00 on a telegraph company for the privileges of transmitting messages by telegraph between points in the state is prima facie reasonable, but the company subject to such tax may show that it is so unreasonable in amount as to amount to an arbitrary interference with private business.

5. *Same; Evidence.*—A telegraph company may not charge itself with an item paid at the office in the city imposing the tax, in settlement of a claim for damages, for the purpose of invalidating the tax as unreasonable in amount.

6. *Same.*—A mere trifling deficiency occurring as a result of business for a short period does not show of itself that the taxing power has been abused by a municipality levying an occupation tax; this is true although the amount of business which would probably be done by a telegraph company, and the probability of doing it at a profit, are elements to be taken into account in fixing the license tax by a city imposing an annual tax for revenue for the privilege of transmitting messages between points in the state, and this court must be led irresistibly to the conclusion that the tax is excessive before it can pronounce it void, taking into consideration a general survey of all conditions affecting the city's wealth and that of the company as disclosed by past experience, and the probabilities of the future.

7. *Same; Violation; Persons Liable.*—An agent of a telegraph company which had not taken out license as required by the city ordinance imposing an annual license tax on the privilege of transmitting messages in this state is subject to prosecution for engaging as agent in the business.

8. *Witnesses; Knowledge of Facts.*—A witness who has no personal knowledge as to the receipts of a telegraph company during a specified month and no memoranda thereof shown to be correct, is not competent to testify as to such receipts.

APPEAL from Talledaga City Court.

Heard before Hon. G. K. MILLER.

D. G. Williams was convicted of violating an ordinance of the city of Talledega imposing a license tax of $100.00 upon telegraph companies doing an intrastate business in that city, Williams being the agent of the Western Union Telegraph Company, and having an

[Williams v. City of Talladega.]

office and transacting intrastate business there. From a judgment of conviction he appeals. Affirmed.

GEORGE H. FEARSONS, BROWN & WEBB, RAY RUSHTON, and M. W. WILLIAMS, for appellant.—The ordinace is unreasonable, and therefore, void.—*Ex parte Byrd*, 87 Ala. 17; *Hendricks v. The State*, 142 Ala. 43; *Marion v. Chandler*, 6 Ala. 899; 52 Cal. 606; 192 U. S. 55; 58 Am. Rep. 447; 29 Am. St. Rep. 137; 85 Mich. 527; 72 Am. Dec. 89; *Lawton v. Steele*, 125 U. S. 137; *Johnson v. Phila.*, 47 South. 526; *Simrall v. Covington*, 90 Ky. 444. The testimony of the witness Baker, although apparently hearsay must be considered on this appeal because not objected to in the court below.—*Masterson v. Fuller*, 62 Ala. 146; *Rice v. Tobias*, 89 Ala. 214; *Higdon v. Kennamer*, 112 Ala. 351; *McLendon v. Bush*, 127 Ala. 470. The amount of the receipts derived from intrastate business for the month of January, 1908, was admissible and DuBose was competent to testify as to same.—*Crook v. Webb*, 125 Ala. 457; *Stewart v. Mithcum*, 135 Ala. 546. The franchise of the company to do business in the city of Talladega is derived solely from the Federal Congress, and is therefore, not taxable by the city for purposes of revenue.—*W. U. T. Co. v. Texas*, 105 U. S. 460; *Leloup v. Port of Mobile*, 153 U. S. 640; *W. U. T. Co. v. Mass.* 125 U. S. 530; *Postal T. Co. v. Charleston*, 153 U. S. 161; *McCullough v. Maryland*, 4 Wheat. 316; *Osborn v. Bank of U. S.*, 9 Wheat. 940. The act of 1866 is a valid exercise of the power of Congress.—Authorities supra, and *Pensacola v. Western Union*, 46 U. S. 1; *Stockton v. Baltimore R. R. Co.*, 32 Fed.; *San Fran. v. W. U. T. Co.*, 91 Cal. 140; 127 U. S. 1; 196 U. S. 1. By the Act of 1866, Congress intended and did grant to telegraph companies accepting its terms the privilege of

doing not only an interstate but an intrastate business, and hence, the company was not subject to the license tax interposed.—Authorities supra, and *W. U. T. Co. v. Visalia,* 149 Cal. 744; *Harmon v. City of Chicago,* 147 U. S. 396; *Moran v. New Orleans,* 112 U. S. 69; *Cal. v. Cent. Pac. Ry. Co.,* 127 U. S. 1. The ordinance is invalid in that it fails to exclude messages sent on government business within the state.—Authorities supra. It is also invalid for the reason that the license imposed is for revenue and not for police regulation or inspection.—192 U. S. 64; 115 Fed. 202; 58 Am. St. Rep. 447; 13 Am. St. Rep. 468; *Austin v. Murray,* 16 Pick. 126. The city of Talladega has no right to arrest an operator of the Western Union Telegraph Company for violating a license ordinance.—*Ex parte Conway,* 48 Fed. 72; *In re Matthews,* 122 Fed. 248.

W. B. CASTLEBERRY, and W. B. HARRISON, for appellee.—The city had authority to levy the tax.—Sections 1339 and. 1344, Code 1907. The presumption is that the tax was reasonable.—*Gamble v. Montgomery,* 147 Ala. 684. A city can license corporations engaged in interstate business, upon its intrastate business.—*Anniston v. Southern Ry. Co.,* 112 Ala. 557; *A. G. S. v. Bessemer,* 113 Ala. 668; *N. C. & St. L. v. Ala. City,* 134 Ala. 414. Telegraph Companies are not immune from license tax, although it has accepted the provisions of the Acts of Congress of 1866.—*W. U. T. Co. v. Seay,* 132 Ala. 472; *Ratterman v. W. U. T. Co.,* 127 U. S. 411; *U. P. R. R. Co. v. Penniston,* 18 Wall. 5; *Osborn v. Florida,* 164 U. S. 650; *New York Ry. Co. v. Penn.,* 158 U. S. 436. The tax is not prohibitory or unreasonable.—*Ex parte Sykes,* 102 Ala. 173; *Kendrick v. The State,* 142 Ala. 43; *Williams v. Fears,* 179 U. S. 270; *Attalla v. N. C. & St. L.,* 118 Ala. 362; *N. C. & St. L. v. Alabama City, supra*

SAYRE, J.—Plaintiff in appeal was convicted of the violation of an ordinance of the city of Talladega, be-cause, as agent of the Western Union Telegraph Company, he engaged in the business of sending messages between that city and other points in this state without first obtaining a license. The question of first importance raised by the appeal relates to the operation and effect in such case of the act of Congress of July 24, 1866 (Act July 24, 1866, c. 230, 14 Stat. 221; sections 5263-5268, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3579]), known commonly as the "Post Roads Act." Appellant's contention is that this act and the acceptance by the telegraph company of its provisions constitute the company a licensee of the United States in respect to intrastate as well as its interstate business of transmitting messages, and render it immune to the imposition of a license tax by the state. The contention confesses that the decisions of the Supreme Court of the United States have finally determined that tele-graphic messages carried and delivered exclusively within the states are elements of internal commerce, do not fall under the influence of the inter-state commerce clause of the federal Constitution, although the same corporation is using the same agents and instrumentalities in interstate commerce, and are therefore subject to the taxing power of the state. But it is urged that, entirely apart from any question as to how the ordinance in question may be affected by the power of Congress to regulate commerce among the several states, it must be condemned for the reason that it runs contrariwise to the post roads act of Congress passed in pursuance of its power under the Constitution to establish post roads. That act provided "that any telegraph company accepting said act shall have the right to construct, maintain and operate its lines of telegraph through and on any part

of the public domain of the United States in and along any of the military and post roads of the United States which have been or may hereafter be constructed by act of Congress."—7 Fed. Ann. St. 205-213. In 1872 Congress passed an act which established as post roads "all railroads or parts of railroads, which are now or may hereafter be in operation." And in 1884 an act "that all public roads and highways while kept up and maintained as such are hereby declared to be post roads."—5 Fed. Ann. St. pp. 900, 901 (U. S. Comp. St. 1901, pp. 2707, 2708). In consideration of these advantages Congress reserved the right of precedence in the use for public business of the lines of companies accepting the benefits of the act at rates to be fixed by the Postmaster General "Thus, as to government business, companies of this class become government agencies."—*Telegraph Co. v. Texas,* 105 U. S. 460, 26 L. Ed. 1067. It is made to appear in the agreed statement of facts that the Western Union Company has accepted the benefits of the act, and that the roads along which its lines are constructed within the state of Alabama and the city of Talladega are post roads. The argument proceeds: There is no reason to suppose that the government of the United States did not intend to secure for its postal, military, and other business between points within a state facilities equal to those secured for its business between points in different states. One may be as important as the other. The conclusion is that Congress intended to grant the right to carry on the business of telegraphing between points within the state, and granted it in a way that put it beyond the interference of the state.

It is to be observed that the argument lays out of the case all consideration of the relation of the business of sending telegraphic messages in interstate commerce;

and this it may properly do, for, while on one hand the power of the state to tax messages exclusively between points within the state as a part of internal commerce is established by the repeated decisions of the Supreme Court of the United States, it must, on the other, be conceded that the power conferred upon Congress by the interstate commerce clause of the Constitution is entirely distinct from the power conferred in respect to the establishment of post roads. The question then is whether the act to which reference is made was intended to confer a franchise upon the Western Union and other companies accepting its provisions to carry on an intrastate business in such way as to put it beyond the power of the state to impose a privilege or license tax upon it. This involves a question of federal Constitution and law, and, if it has been determined by the Supreme Court of the United States, that determination must be final so far as we are concerned. We have already quoted the Supreme Court of the United States to the effect that as to government business the telegraph company is a government agency. As a summing up of a number of its own decisions, it was said by that court in *Western Union Telegraph Co. v. Alabama*, 132 U. S. 472, 10 Sup. Ct. 161, 33 L. Ed. 409, that the principle in regard to telegraph companies which have accepted the provisions of the act of Congress of July 24, 1866, is "that they shall not be taxed by the authorities of a state for any messages, or receipts arising from messages, from points within the state to points without or from points without the state to points within, but that such taxes may be levied upon all messages carried and delivered exclusively within the state." There was consideration of the interstate commerce clause, because that too was involved; but the conclusion of the case, and that of the cases cited, could not

have been reached except on the theory that the argument here made is not grounded in a correct appreciation of the force and effect of the act of Congress in relation to telegraph companies.

In *Western Union Telegraph Co. v. Massachusetts*, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790, a tax was assessed against the company upon the value of its shares which were apportioned to that state on a mileage basis. This was said by the court to be essentially an excise upon the capital of the corporation, and that, while it was nominally upon the shares of the capital stock of the company, it was in effect a tax on account of property owned and used by it in the state of Massachusetts. The argument was pressed upon the court that the tax was void because it violated the rights conferred upon the company by the act of July 24, 1866. The court said: "This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the federal government, carries with it any exemption from the ordinary burdens of taxation. While the state could not interfere by any specific statute to prevent a corporation from placing its lines along these post roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the state for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein to establish the proposition that such a company owed no obe-

dience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support." And *Telegraph Company v. Texas, supra; Railroad Co. v. Peniston,* 18 Wall. 5, 21 L. Ed. 787; *Thompson v. Pacific Railroad Co.,* 9 Wall. 579, 19 L. Ed. 792, and *National Bank v. Commonwealth,* 9 Wall. 353, 19 L. Ed. 701, were cases cited and discussed.

In *Massachusetts v. Western Union Telegraph Company,* 141 U. S. 40, 11 Sup. Ct. 889, 34 L. Ed. 628, the court again considered the question, considered the effect of the act of Congress on the power of the state to tax, and reached the same conclusion. So, also, in *St. Louis v. Western Union Telegraph Company,* 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, where the effort was to charge the company for its use of the streets. In *Telegraph Company v. Texas, supra,* this language was used: "The Western Union Telegraph Company having accepted the restrictions and obligations of this provision by Congress (the act of July 24, 1866) occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the state is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business." It was also said: "Any tax, therefore, which the state may put on messages sent by private parties, and not by agents of the government of the United States, from one place to another exclusively within its own jurisdiction, will not be repugnant to the Constitution of the United States." And the cause was reversed with directions which authorized the collection of the tax on the appellant's intrastate messages sent by private parties. The argument now advanced was not specifically an

swered, but the court had the act of Congress before it, and its judgment evidenced an understanding of its repugnant meaning to that contended for by appellant here. *Postal Telegraph Cable Co. v. Charleston,* 153 U. S. 692, 14 Sup. Ct. 1094, 38 L. Ed. 871, reviewed the cases we have mentioned and others, and disposed of the identical argument here advanced by saying: "It is obvious that the advantages or privileges that are conferred upon the company by the act of July 24, 1866, are in the line of authority to construct and maintain its lines as a means or instrument of interstate commerce, and are not necessarily inconsistent with a right on the part of the state in which business is done and property acquired to tax the same within the limitations pointed out in the cases heretofore cited." All this was repeated and reaffirmed in *Western Union Telegraph Co. v. Gottlieb,* 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116.

From the cases we have cited, and from others to be found cited in them, it is to be seen that the argument here made has been repeatedly urged by this appellant's company upon the Supreme Court of the United States without success, and, while perhaps it has never been answered in the form in which it is now cast, we cannot assume that it has been misunderstood. It certainly has not been assented to.

Any general discussion of the principles involved will hardly be deemed necessary after citation of the authorities to which we have referred. They conclude our judgment. Some other considerations leading to the same result may develop from such brief notice as we shall give to the cases cited by appellant to sustain its position. They are *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Osborn v. Bank,* 9 Wheat. 740, 6 L. Ed. 204; *Western Union Telegraph Co. v. Visalia,* 149 Cal. 744, 87 Pac. 1023; *San Francisco v. Western Union*

*Telegraph Co.,* 96 Cal. 140, 31 Pac. 10, 17 L. R. A. 301;
*Western Union Telegraph Co. v. Lakin,* 33 Wash. 326,
101 Pac. 1094 (May 28, 1909); *Harmon v. Chicago,* 147
U. S. 396, 13 Sup. Ct. 306, 37 L. Ed. 216; *Moran v. New
Orleans,* 112 U. S. 69, 5 Sup. Ct. 38, 28 L. Ed. 653; *Cal-
ifornia v. Central Pacific Ry. Co.,* 127 U. S. 1, 8 Sup.
Ct. 1073, 32 L. Ed. 150; *Western Union Telegraph Co.
v. Texas,* 105 U. S. 460, 26 L. Ed. 1067. *McCulloch v.
Maryland* and *Osborn v. Bank,* in which all the cases
on this subject seek support, were, so far as the ques-
tion here raised is concerned, to the same effect. The
latter reviews and reaffirms the principles declared in
the first. Those cases settled the constitutional power
of Congress to incorporate a bank, and that a state has
no constitutional power to tax the bank incorporated
by Congress. In the latter case Chief Justice Marshall
states that the foundation of the argument in favor of
the right of a state to tax a bank was laid in the suppos-
ed character of that institution. That argument sup-
posed the corporation to have been originated for the
management of an individual concern, to have been
founded upon contract between individuals having pri-
vate trade and private profit for its great end and prin-
cipal object. To this the Chief Justice replied: "If
these premises were true, the conclusion (that the state
might tax) drawn from them would be inevitable. This
mere private corporation, engaged in its own business,
with its own views, would certainly be subject to the
taxing power of the state as any individual would be;
and the casual circumstance of its being employed by
the government in the transaction of its fiscal affairs
would no more exempt the private business from the
operation of that power than it would exempt the pri-
vate business of any individual employed in the same
manner." The appellant's company derives its right to

exist as a corporation and its right to engage in the business of transmitting telegraphic messages from the state of New York where it was chartered and organized. We think it may be assumed that this private corporation has private profit for its main object, and that its service to the government is only one incident of an enormous business which it carries on for gain. As was said in *Thomson v. Pacific Railroad, supra*: "It must be remembered that the Bank of the United States was a corporation created by the United States; and, as an agent in the execution of the constitutional powers of the government, was endowed by the act of creation with all its faculties, powers and functions. It did not owe its existence, or any of its qualities, to state legislation. And its exemption from taxation was put upon this ground." And in *Railroad Co. v. Peniston*, 18 Wall. 5, 21 L. Ed. 787, the court argued: "It cannot be that a state tax which remotely affects the efficient exercise of a federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the states all power to tax persons or property." Congress may make contracts with individuals or corporations for services to be rendered to the government, and may in its discretion exempt the agencies employed from state taxation which will really prevent or impede the performance of them; but, in the absence of all legislation on the part of Congress indicating such exemption, the exemption cannot be applied to the case of a corporation deriving its existence from state law, and exercising its franchise under such law.— *Thompson v. Pacific Railroad, supra*.

*Harmon v. Chicago* and *Moran v. New Orleans* raised the same question. The effort of those cities was to impose a license tax upon vessels plying the navigable waters of the United States under license from the Uni-

[Williams v. City of Talladega.]

ted States. The decision was that the municipalities had nothing to confer, and therefore no privilege to tax. The privilege sought to be taxed was a privilege offered by Congress only. In *California v. Pacific Railroad Company* it was considered that franchises conferred by Congress cannot, without its permission, be taxed by the states. One question there was whether the railroad company had a franchise from Congress. The facts were that Congress on July 1, 1862, had passed an act creating and erecting a body corporate and politic in deed and in law, known as the Union Pacific Railroad Company, to construct a railroad across the territories of the United States from the Mississippi river to the Pacific Ocean, and to secure the use of the same to the government for postal, military and other purposes.— Act July 1, 1862, c. 120, 12 Stat. 489. This corporation was subsequently, under the authority of acts of Congress, consolidated with various other corporations, one a corporation chartered by the state of California, thus forming the Central Pacific Railroad Company with the powers and franchises of the constituent companies. The court, therefore, said that, if the Central Pacific Railroad Company was not a federal corporation, its most important franchises, including that of constructing the railroad, were conferred upon it by Congress. It was ruled that those franchises could not be taxed by the states. That case is no authority for the proposition that the act of July 24, 1866, conferred a nontaxable franchise upon the companies accepting its terms, and has never been cited by the Supreme Court of the United States as going to that conclusion, as often as this question has arisen. We have already quoted enough from *Telegraph Company v. Texas* to show that it supports the power of the city of Talladega to levy its license tax.

[Williams v. City of Talladega.]

The cases from the Supreme Court of California and Washington drive to a conclusion different from that we have reached, but they assign a meaning to *McCul-loch v. Maryland, Telegraph Company v. Texas,* and *Western Union Telegraph Co. v. Massachusetts,* which has not been given to those decisions in the numerous cases in which they have been cited by the Supreme Court of the United States, and from some of which we have quoted. These cases from California and Washington rely for immediate authority upon the case of *California v. Central Pacific Railroad Company.* We have said enough to make clear our opinion that these cases are based upon an understanding of the decisions of the Supreme Court of the United States different from our own, and this is sufficient to dispose of them.

It is further insisted that the ordinance must be pronounced invalid because it fixes a tax upon the privilege of sending messages by telegraph between points exclusively within the state without excluding messages sent for the government of the United States. *Western Union Company v. Texas, supra,* and *Le Loup v. Port of Mobile,* 127 U. S. 640, 8 Sup. Ct. 1383, 32 L. Ed. 311, are cited as authority for this insistence. The judgments of those cases pronounced the taxes there involved to be void because it appeared that the burden or a part of the burden of them fell upon interstate commerce upon which the state nor its subdivisions had power to levy any tax whatever. In the former of these cases it appeared that the tax was estimated on the basis of messages sent, which included messages sent about the business of interstate commerce. As we have seen, the tax for that reason and to that extent only was declared to be void. In *Le Loup v. Port of Mobile.* the tax was levied upon the occupation without discrimination as to whether it concerned interstate or in-

trastate business. This court in *Moore v. City of Eu-faula*, 97 Ala. 670, 11 South. 921, proceeding upon reason and the authority of other decisions of the Supreme Court of the United States, refused concession to the idea that a privilege tax was void because it did not affirmatively appear that it did not affect the sending of messages on government business. We are satisfied with that decision. In the instant case the tax is limited in the terms of the ordinance levying it to the business of sending messages between points exclusively within the state. The fact that a part of the business done by the company consists in the sending of messages for the government does not affect the right of the state to impose a reasonable privilege tax, as we believe has appeared from a consideration of the decisions of the Supreme Court of the United States. If government messages are transmitted at a reduced rate which has material effect upon the company's income at Talladega, that was the subject of proof and must have been, and must be now, taken into account when passing upon the reasonableness of the license charged.

Prima facie the tax was reasonable.—*Gamble v. Montgomery*, 147 Ala. 682, 39 South. 353, and authorities there cited. But it was competent for the defendant to show by evidence that it was so unreasonable in amount as to demonstrate an abuse of discretion and an arbitrary interference with private business (*Kendrick v. State*, 142 Ala. 43, 39 South. 203) ; and this the defendant endeavored to do. The ordinance imposes a tax for the privilege of transmitting messages beeween the city of Talladega and points within the state. It does not seek to tax interstate business. The appellant's company, in the effort to show the unreasonableness of the tax, furnished the figures upon which its ar-

gument is based, and those figures have been accepted as correct as far as they go, except in one particular to be noted. The company undertook to show its expenses and business done at Talladega during the year 1908, the year for which the tax was levied, but was not permitted to adduce figures covering the month of January. Thereupon, on the basis of the figures for 11 months, making a pro rata deduction from the amount of the annual license, it shows that the total expense of maintaining the office at Talladega for the 11 months was $1,749.56. The total income for the same period, including inter and intra state business, was $2,034.39. The gross income from intrastate business for the period was $465.70, approximately 22 per centum of the entire income on both kinds of business. It is, therefore, assumed that intrastate business should be charged with a like percentage of the entire expense, to wit, 22 per centum of the entire expense, equaling $384.90. To this add a pro rata share of the annual tax, $97.66. The result as thus shown by the appellant is that the company's intrastate business for the 11 months was done at a loss of $10.86. These figures thus propounded to the court must be amended in one particular against the appellant, though the amendment is not of enough consequence to affect our view of the case. In its statement of expenses the company includes an item of $10 paid by the office at Talladega in settlement of a claim for damages made against it. It is clear that the company is not entitled to charge itself with this item in order to make out an invalidation of the tax imposed. It thus appears that the company did business during 11 months at a net loss of 86 cents. On the facts disclosed it is urged that the tax of $100 per annum imposed for the privilege of doing business at Talladega is prohibitory and void.

If it be conceded that the amount of receipts at the Talladega office from messages to and from points in this state is an accurate measure of the value of the intra-state business to which that office contributes in the way of sending and receiving messages whether the tolls are paid there or elsewhere, and that the apportionment of expenses is just what it ought to be—both which concessions seem to us doubtful—yet we cannot accede to the conclusion, necessarily implied by the argument, that the power of the municipality to tax an occupation is dependent upon and limited by the ability of the occupation to earn a profit. It was said in *N. C. & St. L. Ry. v. Attalla,* 118 Ala. 368, 24 South. 452, that "the reasonableness or unreasonableness of a license tax cannot be determined by the extent of the business of a single individual. There may be competition or negligence on his part or other considerations affecting the extent of the business." Granting that appellant's company had no opposition at Talladega, and that no negligence in the conduct of its business is made to appear, at least one other consideration is that the city could not know in advance whether the business of the appellant's company would be conducted during the year at a loss or a profit, but it had the right, upon a general survey of all conditions affecting its own welfare and that of the company, so far as they were disclosed by the experience of the past and the probabilities of the future, to levy in advance a reasonable tax, and the court must be led irresistibly to the conclusion that the tax is excessive and prohibitory upon a like survey before it can pronounce the tax void. The trifling deficiency shown in this case occurring as the result of business for one short period does not suffice to show an abuse of the taxing power. See *Atlantic, etc., Telegraph Co. v. Philadelphia,* 190 U. S. 260, 23 Sup. Ct

817, 47 L. Ed. 995. Unquestionably the amount of business which would probably be done and the possibility of doing it at a profit are elements to be taken into account in fixing a license tax for revenue, but we cannot see the end of a doctrine which would hold that a municipality in levying for a definite period a tax upon an occupation highly useful, though in its nature monopolistic and so relieved of competition reducing its proits, is limited by the power of that occupation to earn a profit during that period　Nor does the evidence afford that view, at once comprehensive and accurate, of the conditions under which the appellant's company does business at Talladega year in and year out, which would justify us in pronouncing the tax in question to be void. Appellant may be prosecuted for engaging as an agent in the business for which his principal has not taken out a license.—*Nashville, etc., Ry. Co. v. Attalla,* 118 Ala. 362, 24 South. 450, and authorities there cited.

On the showing made in the record we are unable to say that the court erred in refusing to permit the witness Du Bose to testify to the receipts of the office during January, 1908, the month next before the 11 months embraced in the period covered by the figures heretofore referred to. The objection seems to have been sustained on the idea that the witness did not have personal knowledge of the fact nor any memorandum, showing the same, known to be correct. Under these conditions, the witness could not be heard to state the fact inquired about.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, MCCLELLAN, and EVANS, JJ., concur.