58 So.2d 100

**WARRIOR RIVER TERMINAL CO. et al. v. STATE.**

3 Div. 538.

Supreme Court of Alabama.

April 10, 1952.

Rehearing Denied Aug. 27, 1952.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Berryman Green, Sp. Assts. to Atty. Gen., E. Burns Parker, U. S. Atty., and Hartwell Davis, Asst. U. S. Atty., Montgomery, for appellants.

A. A. Carmichael, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellee.

210

LIVINGSTON, Chief Justice.

The appeal is from a decree of the Circuit Court, in Equity, of Montgomery County, Alabama, sustaining the state's demurrer to the amended bill of complaint of the Warrior River Terminal Company, a corporation.

The sole question presented is whether the real and personal property of the Warrior River Terminal Company, an Alabama corporation all of whose capital stock is owned by the Inland Waterways Corporation which in turn is a wholly owned corporation of the United States, may be constitutionally subject to ad valorem taxation by the State of Alabama or its political subdivisions.

The pertinent facts involved, admitted by the State's demurrer, may be briefly stated as follows:

The Warrior River Terminal Company is a corporation organized as a common carrier on January 18, 1926, originally as the Port of Birmingham Railway Company, under the laws of the State of Alabama and qualified by the laws of the State to do business therein. The Inland Waterways Corporation was created by an Act of Congress approved June 3, 1924. All of the stock of the corporation is owned by the United States. It is a carrier engaged in the transportation of property in conformity with and pursuant to declared congressional purposes. Transportation Act 1920, c. 91, 41 Stat. 456, § 500, 49 U.S.C.A. § 142.

Following preliminary notice, protest and hearing, the Department of Revenue of the State of Alabama made a final assessment against the Warrior River Terminal Company on July 12, 1948, for ad valorem taxes on account of tangible property owned by the company. Thereafter, and under the provisions of Title 51, Section 140, Code 1940, the company duly perfected its appeal to the Circuit Court, in Equity, of Montgomery County.

During all the time material hereto and since the year 1926, all of the capital stock of the Warrior River Terminal Company has been and was owned by the Inland Waterways Corporation. And further, that during all the period of time pertinent hereto, and since the year 1926, the Warrior River Terminal Company and the Inland Waterways Corporation have been engaged solely in the federal purpose of transportation of property in conformity with and pursuant to an Act of Congress popularly called the "Transportation Act of 1920."

The State's demurrer was sustained to the bill of complaint filed by the Warrior River Terminal Company in the Circuit Court, in Equity, of Montgomery County, Alabama, and this appeal followed.

As we construe the complaint, no attempt is made to allege that the complainant is engaged solely in the transportation of property for the United States Government. We take it, that complainant is engaged in business as a common carrier, serving the public generally. For aught appearing it has its own officers, agents and servants who conduct its business as other domestic

corporations. No contention is made that the taxes assessed are discriminatory. Nor is the exemption from taxation claimed under any Act of Congress.

We have found no case directly in point on the question here presented. Appellant relies principally upon the cases of Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466; McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; U. S. v. Allegheny County, 322 U.S. 174; Clallam County v. U. S., 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328. We have considered the principles enunciated in these cases, but in our opinion they do not support the contentions of appellant because of the differences in factual background.

On the other hand, we are of the opinion that other decisions of the United States Supreme Court are more analogous to facts of the instant case and are more persuasive in determining the question involved and which we will refer to later.

It is firmly established by the authorities that a corporation is a distinct entity: that it is separate and distinct from is shareholders, and that the property representing its capital is vested in and owned by the corporation and not the shareholders.

In the case of Moore & Handley Hdw. Co. v. Towers Hdw. Co., 87 Ala. 206, 6 So. 41, 43, the foregoing principle was stated as follows:

"The general doctrine is well established, and obtains both at law and in equity, that a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it, and is not to be affected by the personal rights and obligations and transactions of its stockholders, and this whether said rights accrued or obligations were incurred before or subsequent to incorporation."

And in the case of First National Bank of Gadsden v. Winchester, 119 Ala. 168; 24 So. 351, 352, it was said:

" 'The courts of law, however,' * * * recognize a corporation only as one body acting in the corporate name. The individual stockholders are

not, in contemplation of law, parties to contracts made by the association in a corporate capacity, nor have they any legal right or title to property vested in the corporation. At law, a corporation and its stockholders are considered as distinct from each other, * * *.

"The principle here stated, that the legal title to the property of the corporation is in the corporation itself, and not the shareholders, cannot, of course, be questioned; and the authorities, for the most part, go so far as to hold that, even when the body ceases to be an association of persons by reason of the concentration of all the stock in the hands of one owner, the corporation is not thereby dissolved, and the sole stockholder does not thereby become legal owner of the property."

To the same effect are the decisions of the Supreme Court of the United States. In Burnet, Commissioner of Internal Revenue v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 199, 77 L.Ed. 399, it was said:

" 'The fact is that petitioner did have a separate legal existence with privileges and obligations entirely separate from those of its stockholders. The fact that it had only one stockholder seems of no legal significance. Cannon Mfg. Co. v. Cudahy, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634.'

"Counsel for respondent concede that ordinarily a corporation and its stockholders are separate entities, whether the shares are divided among many or are owned by one. Consequently they make no effort to support any general rule under which a corporation and its single stockholder have such identity of interest that transactions between them must be disregarded for tax purposes. * * *

"Certainly the improvement company and the estate were separate and distinct entities; the former was avowedly utilized to bring about a change in ownership beneficial to the latter. For years they were recognized and treated as different things and taxed

accordingly upon separate returns. The situation is not materially different from the not infrequent one where a corporation is controlled by a single stockholder."

And in U. S. v. Strang, 254 U.S. 491, 41 S.Ct. 165, 166, 65 L.Ed. 368:

"The corporation was controlled and managed by its own officers and appointed its own servants and agents who became directly responsible to it. Notwithstanding all its stock was owned by the United States it must be regarded as a separate entity."

Mr. Justice Holmes, in Klein v. Board of Tax Supervisors, 282 U.S. 19, 51 S.Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679, wrote as follows:

"But it leads nowhere to call a corporation a fiction. If it is a fiction it is a fiction created by law with intent that it should be acted on as if true. The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members."

See also First National Bank of Boston v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401; Elenkrieg v. Siebrecht, 238 N.Y. 254, 144 N.E. 519, 34 A.L.R. 592; 13 Am.Jur. § 6, p. 157 and p. 159.

It is also well established that property owned by a private person and used by him in performing services for the Federal government is subject to state and local ad valorem taxes. In the recent case of Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 566, 93 L.Ed. 721, Mr. Justice Rutledge, speaking for the Supreme Court of the United States as late as March 1949, stated:

"It has long been established that property owned by a private person and used by him in performing services for the Federal Government is subject to state and local ad valorem taxes." (Citing many cases in note 18.)

Among the cases cited by Mr. Justice Rutledge in support of the above proposition is that of Choctaw O & G RR Co. v. Mackey, 256 U.S. 531, 41 S.Ct. 582, 583, 65 L.Ed. 1076, wherein Mr. Justice Brandeis stated as follows:

"The mere fact that property is used, among others, by the United States as an instrument for effecting its purpose does not relieve it from state taxation. * * *

"And even though it be granted that the federal government utilize the railroad as an instrument in working out its policy toward the Indians, the tax upon the railroad property would be none the less valid."

In the Mackey case, supra, the railroad company made substantially the same contention that the taxpayer is making in the instant case, that is, that the railroad property was immune from state taxation.

In the Texas case, supra, Mr. Justice Rutledge referred to and relied upon the case of Thompson v. Union Pacific RR Co., 9 Wall. 579, 19 L.Ed. 792. In this case, as in the instant case, the railroad company was organized under the laws of the state, but Congress had granted to the railroad company certain financial assistance; had made a loan to the railroad company and had taken back the mortgage and in consideration for which the railroad company had bound itself to perform certain duties for the Federal government and was to pay to the Federal government five per cent of its net earnings. It was insisted by the railroad company that it was immune from state taxation because it was an agent or instrumentality of the Federal government and the tax would hinder and embarrass it in the performance of its obligations and duties to the United States.

On the other hand, the State insisted that the property of the company only bore its due proportion of the taxes levied upon all property in the state of Kansas and that no discrimination had been made against the company in the matter of taxation. Thus, the question arose whether the property of the railroad company was subject to the tax which the statutes of Kansas authorized to be levied on all other property not specifically exempted from state taxation. It was urged by the railroad company that the aid granted by Congress

to the road was granted in the exercise of its constitutional powers to regulate commerce, to establish post offices, and post roads, to raise and support armies, and that by the legislation which supplied aid, required security, imposed duties, and finally exacted a percentage of income, the road was adopted as an instrument of the government and as such was not subject to taxation by the state. In substance this is the same defense as is interposed in the instant case, and, as in the instant case, the railroad company relied with much confidence upon the old case of McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, but the court clearly points out that the McCulloch case was not authority for the position taken by the railroad company, saying:

"But we apprehend that the reasoning of the Court in that case will hardly warrant the conclusion which counsel deduce from it in this. In that case the main questions were: whether the incorporation of the Bank of the United States, with power to establish branches, was an act of legislation within the constitutional powers of Congress, and whether the bank and its branches, as actually established, were exempt from taxation by state legislation. Both questions were resolved in the affirmative. In deciding the first the court did not hold, as counsel suppose, that Congress, under the Constitution, has absolute and exclusive power to determine whether the act of legislation is or is not necessary and proper as a means for carrying into effect one or more of its enumerated powers. It defined the words 'necessary' and 'proper' as equivalent in meaning to the words 'appropriate, plainly adapted, not prohibited, but consistent with the letter and spirit of the Constitution', and held that the incorporation of a bank with branches was the necessary and proper means to the effectual exercise of granted power within the definition thus given. It held further, that Congress was, within this limit, the exclusive judge as to the means best adapted to the end

proposed, and that its choice of any means of the defined character was restricted only by its own discretion. But the question, whether the particular means adopted was within the general grant of incidental powers, was determined by the court."

Continuing, the court further stated, that they did not doubt that, the principles settled by the McCulloch case, that Congress might, in the exercise of powers incidental to the expressed powers conferred upon Congress, make or authorize contracts with individuals or corporations for services to the government and might grant aids, by money, or land, in preparation for and in the performance of such services and that it might make any stipulation in relation to such aids not contrary to the Constitution and "may exempt in its discretion, the agencies employed in such services from any state taxation which will really *prevent* or *impede* the performance of them."

Continuing, the court then asked the following questions: "But can the right of this road to exemption from such taxation be maintained in the absence of any legislation by Congress to that effect?" In answering the question the court stated:

"It is unquestionably true that the court, in determining the second general question, already stated, did hold that the Bank of the United States, with its branches, was exempt from taxation in the State of Maryland, although no express exemption was found in the charter. But it must be remembered that the Bank of the United States was a corporation created by the United States; and, as an agent in the execution of the constitutional powers of the government, was endowed by the Act of Creation with all of its faculties, powers and functions. It did not owe its existence, or any of its qualities, to state legislation. And its exemption from taxation was put upon this ground. Nor was the exemption itself without important limitations. It was declared not to extend to the real property of the bank within the state; nor to in-

214

terests held by citizens of the state in the institution. * * *.

"But we are not aware of any case in which the real estate or other property of the corporation not organized under an Act of Congress, has been held to be exempt, in the absence of express legislation to that effect, to just contribution, in common with other property, to the general expenditure for the common benefit, because of the employment of the corporation in the service of the government. * * *.

"We do not think ourselves warranted, therefore, in extending the exemption established by the case of McCulloch v. Maryland beyond its terms. We cannot apply it to the case of a corporation deriving its existence from state law, exercising its franchise under state law, and holding its property within state protection.

"We do not doubt the propriety or the necessity, under the Constitution, of maintaining the supremacy of the General Government within its constitutional sphere. We fully recognize the soundness of the doctrine, that no state has 'a right to tax the means employed by the government of the union for the execution of its powers'. But we think there is a clear distinction between the means employed by the government and the property of agents employed by the government.

"Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means.

"No one questions that the power to tax all property, business and persons within their respective limits, is original in the states and has never been surrendered. It cannot be so used, indeed, as to defeat or hinder the operations of the national government, but it will be safe to conclude, in general, in reference to persons and state corporations employed in government service, that when Congress has not interposed to protect their property from state taxation, such taxation is not obnoxious to that objection.

"We perceive no limits to the principle of exemption which the complainants seek to establish. It would remove from the reach of state taxation all the property of every agent of the government. Every corporation engaged in the transportation of mails, or of government property of any description, by land or water, or in supplying materials for the use of the government, or in performing any service of whatsoever kind, might claim the benefit of the exemption. The amount of property now held by such corporation and having relation more or less direct to the National Government, and its service, is very great. And this amount is continually increasing; so that it may admit of question whether the whole income of the property which will remain liable to state taxation if the principle contended for is admitted and applied in its fullest extent, may not ultimately be found inadequate to the support of the state governments.

"And because of these advances and these grants, and this fully compensated employment, it is claimed that this state corporation, owing its being to state law, and indebted for these benefits to the consent and active interposition of the State Legislature has a constitutional right to hold its property exempt from state taxation; and this without any legislation on the part of Congress which indicates that such exemption is deemed essential to the full performance of its obligations to the government.

"We are unable to find in the Constitution any warrant for the exemption from state taxation claimed in behalf of the complainants; we must, therefore, answer the questions certified to us, in the affirmative."

It will be observed that Chief Justice Chase placed much stress upon the fact that the Union Pacific Railroad Company was incorporated under the state laws and received from the state its protection; that there was nothing in the charter of said company that exempted it from taxation;

that Congress had not exercised its power to declare that particular railroad or any other railroad exempt from state taxation and that, in view of the silence of Congress, there was no implied immunity of the property of said railroad from taxation.

The above case was followed by the case of Union Pacific Railroad Company v. Peniston, 18 Wall. 5, 21 L.Ed. 787; it may be pointed out that the facts in this case were on all fours with the facts in the case just hereinabove quoted from, with the exception that the Union Pacific Railroad Company in the Peniston case was incorporated under the laws of Congress.

In the beginning Mr. Justice Strong emphasized the fact that the taxing power of the state is one of its attributes of sovereignty and that such power exists independently of the Constitution of the United States and underived from that instrument, and that it may be exercised to an unlimited extent upon all property, trades, business, and avocations existing or carried on within the territorial boundaries of the state, except so far as it has been surrendered to the Federal government, either expressly or by necessary implication; that such power is indispensable to the continued existence of the state; that no one ever doubted before the adoption of the Constitution the unlimited power of the state to tax and that the Constitution contains no expressed restriction of this power other than a prohibition to lay any duty on tonnage or impose any duty on imports or exports, except such as may be absolutely necessary for executing the state's inspection laws; that the extent to which the taxing power of the state shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the states commit the exercise of such power; that the only limitation upon this power of the state to tax is that it must not be used so as to burden or embarrass the operations of the National Government. That,

"There is nothing in the Constitution which contemplates or authorizes any direct abridgement of this power by national legislation. To the extent just indicated, it is as complete in the states as the like power within the limits of the Constitution is complete in Congress. Such are the opinions we have expressed heretofore, and we adhere to them now."

Continuing, Mr. Justice Strong further stated:

"It cannot be that a state tax which remotely affects the efficient exercise of the federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the states all power to tax persons or property. Every tax levied by a state withdraws from the reach of federal taxation a portion of the property from which it is taken, and to that extent diminishes the subject upon which federal taxation may be laid. The states are, and they must ever be, co-existent with the National Government. Neither may destroy the other. Hence, the Federal Constitution must receive a practical construction. Its limitations and its implied prohibitions must not be extended so far as to destroy the necessary powers of the states, or prevent their efficient exercise."

In the case of Williams v. The City of Talladega, 164 Ala. 633, 51 So. 330, this court had before it the question of whether or not the City of Talladega could constitutionally levy a tax on the property of the Western Union Telegraph Company. This court, in an opinion written by Mr. Justice Sayre, reviewed many of the cases handed down by the Supreme Court of the United States, and in particular the ones that we have quoted from hereinabove, and drew therefrom the following conclusion: Congress may make contracts with individuals or corporations for services to be rendered to the government, and may, in its discretion exempt the agencies employed from state taxation which will really prevent or impede the performance of them, but in the absence of all legislation on the part of Congress indicating such exemption, the exemption cannot be applied to the case of the corporation deriving its

216

existence from state law, and exercising its franchise under such law.

We are fully persuaded that a corporation existing under and by virtue of the laws of the State of Alabama, and operating under the protection of the laws of this state is a distinct entity, and that its physical properties are subject to indiscriminatory ad valorem taxation. The fact that all of the shares of stock are owned by a federally created corporation whose stock is in turn owned by the United States is not enough in the absence of Congressional act to change that result. It follows that the decree of the court below is due to be, and is, affirmed.

Affirmed.

BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.

FOSTER, J., dissents upon the principle of the cases of Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.C. 23, 68 L.Ed. 191; Ward v. First National Bank, 225 Ala. 10, 142 So. 93.