# *Ex parte* Sikes.

102  173
142   46

## *Application for Habeas Corpus.*

1. *Municipal ordinance; right to license and regulate does not give authority to prohibit by excessive license* —Where, by an act of the legislature, a municipal corporation has the power and authority "to license and regulate the retailing and the wholesale of liquors within the corporate limits," and "to fix the price or tax on all licenses," the only limitation on the power and discretion of the municipality in fixing the price of the licenses is, that the price fixed shall not be so excessive as to be prohibitory; and whether the license fixed by an ordinance of the municipality is so excessive as to be prohibitory, must be determined by the facts and particular circumstances of each case.

APPEAL from the Probate Court of Pike.

Heard before the Hon. W. J. HILLIARD.

The facts of the case are sufficiently stated in the opinion.

HUBBARD, WILKERSON & HUBBARD and WORTHY & FOSTER, for petitioner.—The power "to license and regulate" does not carry the power to tax; nor the power to prohibit by fixing the price of licenses so as to be prohibitory.—Cooley Const. Lim. (6th. Ed.) , 242 ; *Dunham v. Trustees*, 5 Cowen 462; *Miller v. Jones*, 80 Ala. 96 ; *Intendant of Marion v. Chandler*, 6 Ala. 901 ; *Ex parte Burnett*, 30 Ala. 469.

W. L. PARKS, *contra*.—The power conferred on the city of Troy to license and regulate the business of retailing liquors was in the nature of a police regulation, and, therefore, the license fixed was within the authority granted.— *Van Hook v. Selma*, 79 Ala. 361 ; *Burch v. Savannah*, 42 Ga. 596 ; *State v. Cassidy*, 22 Minn. 322 ; *Ex parte Marshall*, 64 Ala. 266 ; *Falmouth v. Watson*, 5 Bush. (Ky.) 660 ; *Chicago Packing Co. v. Chicago*, 88 *Ill.* 221 ; *Crowley v. Christensen*, 137 U. S. 86 ; *Kelly v. Pittsburg*, 14 Otto 78 ; *St. Louis v. Sternberg*, 69 Mo. 289 ; *Youngblood v. Sexton*, 32 Mich. 406 ; Cooley on Taxation, 579, n. 1 ; Bemis on Munic. Ord., 253.

COLEMAN, J.—By an ordinance of the city of Troy, dealers in spiritous liquors were required to pay two thousand dollars for a license. For a violation of this ordinance the defendant was arrested and fined, and, refusing to pay the fine, imprisoned. He sued out a writ of *habeas corpus* before the probate judge who, upon the hearing of the case, refused to discharge the petitioner, and remanded him to the custody of the marshal. From this judgment the petitioner prosecutes his application to this court. All the facts are agreed upon, and the only question is as to the legality of. the ordinance. The prisoner contends that it is prohibitory in its character and effect, and that such an ordinance is not authorized by the municipal charter of ·the city of Troy.

The·act of the legislature, 1890-91, p. 724, declares that ''The mayor and councilmen shall have power and

authority　*　*　to license and regulate the retailing and the wholesale of liquors within the corporate limits, and to provide for the annulling and revoking such license for good cause being shown ;　*　*　*　to license and regulate commission merchants, dry doods and grocery merchants, keepers of hotels and eating houses ; *　*　to prohibit the sale of liquors on any election day ;　*　*　to restrain and prohibit gambling, to prohibit all unlawful assemblies; to prohibit violations of the Sabbath ; to prevent stock from running at large;　* * to prohibit all breaches of the peace," &c., "and to fix the price or tax on all licenses." We think it very clear that the authority "to license and regulate" a business does not include the authority to prohibit it absolutely. We have so held many times.—*Ex parte Burnett,* 30 Ala. 461 ; *Miller v. Jones,* 80 Ala. 89 ; *Ex parte Cowert,* 92 Ala. 94 ; *Ex parte Mayor of Anniston,* 90 Ala. 516.

Independent of the judicial construction given to a statute which merely confers the power to license and regulate a business, a reading of the act in question clearly demonstrates that the intention of the legislature was to authorize the mayor and councilmen to "license and regulate," and not to "restrain and prohibit" the sale of spiritous liquors. Whenever it was intended to confer such power, the words used are "restrain," "prohibit," but these and similar words are not used when the power in regard to the sale of liquors was conferred. We are of opinion the legislature has the constitutional right to prohibit or authorize any community, or municipality, absolutely to prohibit the sale of spiritous liquors.—*Intendant of Marion v. Chandler,* 6 Ala. 899 ; *Ex parte Burnett, supra; Ex parte Cowert, supra* ; *Harris v. Intendant of Livingston,* 28 Ala. 579.

Having the power to prohibit, the legislature undoubtedly could fix the price of a license to sell liquor at any sum, and, had it seen proper to exercise the right, could have conferred on the mayor and councilmen of Troy, by express provision, the power either to prohibit entirely or fix the price of the license at two thousand dollars. It has, however, declared that the "Mayor and councilmen shall have the power to license and regulate the retailing and the wholesale of liquors within the corporate limits," and "to fix the price or tax on all licenses." The only limitation on the power and dis-

cretion of the mayor and councilmen, in fixing the "price of the license" is contained in the words "license and regulate the sale," and this limitation is, that the price fixed shall not be prohibitory. What is the test by which it shall be determined whether a "price for a license" is or is not prohibitory? Upon what principle is it to be held, that a price of two hundred dollars is not prohibitory, and two thousand dollars is prohibitory? What rules and facts must guide the mayor and councilmen in fixing the price of a license, so that the ordinance will be an exercise of power within their granted authority "to fix the price," and not transgress the boundary fixed by the term "to license and regulate," so that it shall not be prohibitory? No one unvarying price will suit for all places and all circumstances. It seems to us the populousness of the municipality, the profitableness of the business, the character of the business proposed to be licensed, and its effects upon the community, the additional expense necessarily entailed by a police supervision of the business, (and perhaps other matters might be mentioned), are all proper subjects of inquiry in arriving at a legal and just conclusion, in fixing a price which will not be prohibitory. In the case of *Ex parte Burnett*, the town council of Cahaba required by ordinance a license of one thousand dollars, and it was pronounced prohibitory in its character. There were no facts in evidence in the case, except the ordinance and the act of the legislature granting charter rights, and the conviction of the petitioner for a violation of the ordinance. And in that case it was said : "Neither is it our purpose to limit the price of a corporation license to the sum fixed by the general law on a license to retail. As one of the incidental powers of a corporation the council may *certainly transcend that limit, provided their ordinance is not in its nature prohibitory.*" We italicize.

The authority granted to the mayor and councilmen of Troy is more specific and enlarged than that under which the town council of Cahaba acted. In the case of *Ex parte Marshall*, 64 Ala. 266, the rule recognized, that the "license may be graduated by the populousness of the community in which the privilege was to be exercised, and the profitableness of the employment;" and in *Van Hook's Case*, 70 Ala. 361, the additional expense

for a faithful enforcement of police superintendence, should be considered.

Under these rules and principles of law we cannot say the ordinance is void upon its face. What are the agreed facts? The city of Troy has a population of about four thousand inhabitants. That in the years 1890, 1891, 1892, 1893 there were three separate retail liquor dealers in Troy, who paid a license of $2,000, and each did a business of about $38,000 in the year 1890, and the business of each in 1891 amounted to $35,000, and in the year 1892, to about $24,000, and in the year 1893, each did a business of $20,000, an aggregate for the four years of $351,000.00. The capital invested upon which this business was transacted is not stated, but it is stated "that the profits on the amount of business was about one-fourth of these amounts, out of which were paid all licenses, besides house rent, clerk hire and other current expenses." It is also stated that the expenses of petitioner, Sykes, for the year 1893 approximated $6,000. What these expenses were for, whether confined solely to the busines of selling liquor, or whether family expenses were included is not stated, and the expenses of the two other dealers are not given. It is also stated that "the other dealers for the year 1893, did an unprofitable business after paying their licenses and other expenses." It also appears that the other two dealers have paid the license for the year 1894, and are continuing in the business. The profits at 25 per cent. on total sales of spiritous liquors in Troy for four years, not exclusive of current expenses, were about $88,000.

We do not think there is anything in this showing, which reasonably satisfies the mind that the license required is prohibitory in a business view. Again, it is agreed in the statement of facts, that there is an average of "seven hundred and fifty violations of the city ordinances during each year, and that two-thirds of them are the results of whisky sold in Troy." It is further agreed, that the present necessary expenses of the city for a marshall and police force exceed thirty-one hundred dollars, "and if there were no saloons and no sale of whisky in Troy, this expense could be reduced to $1,000." Confessedly then, two-thirds of all the violations of the ordinances of the city, and two-thirds of the entire expense required to police the city are

12

traceable solely to the sale of liquor within its corporate limits.    Certainly municipal officers charged with the "protection of the lives, health and property of the citizens, the maintenance of good order and quiet of the community, and the preservation of public morals," and to this end are entrusted with the police power, are justified in the exercise of all the authority granted when they undertake to regulate business, productive of such results.    It is contended that as the sale of liquor increases the violation of the city ordinances, the revenues of the city are proportionately increased, and this, it is said, must be considered in estimating the evil results of the traffic, and the extra expenses of policing the city.    The peace of a community, the quiet and happiness of the family, the influence of example upon the young and old, the public morals, have no money value. The argument leads to the conclusion, that however such a business may increase violations of law, if the revenue therefrom is proportionately increased, the less it is to be condemned as an evil.    We need say no more on this point.

It is futher argued that the amount required for a license shows that the purpose was to raise a revenue for the city, and not for police purposes.    It is manifest that if the purpose of the ordinance was to raise revenue, then it was not intended to be prohibitory.    A business which is prohibited cannot yield a revenue from licenses.    We do not think there is any foundation for the argument, and the facts of the case, without repeating them, justify this conclusion.

Doubtless in providing for the necessary expenses of the city, and in fixing the assessments of taxes upon the property, the income anticipated from licenses, as well as fines, entered into the computations, but this alone would not determine that the licenses were for revenue, as distinguished from a license tax, for police purposes. There are some *dicta* in our own court and declarations of principle by high authority not altogether in harmony with all that we may have said, but our construction of the act of the legislature conferring municipal power upon the mayor and councilmen of the city of Troy is, that there is a full grant of power "to fix the price of licenses," limited only by the grant to "license and regulate the sale of liquor," and the only qualification of

[*Ex parte* Brown.]

power contained in this grant, construed in connection with the unqualified power to "fix the price of licenses," is that it shall not be prohibitory. In our opinion the facts of the case show that the ordinance is within the power granted.

This was the conclusion reached by the trial judge, and in our opinion it was correct. Petition denied.

Affirmed.

### *Application for Habeas Corpus.*

