# Kendrick *v.* The State.

*Prosecution for Engaging in the Business of Emigrant Agent without first Obtaining a License.*

1. *Constitutional law; engaging in business of emigrant agent without obtaining license.*—The Act of the Legislature, approved October 1, 1903, "to prohibit emigrant agents from plying their vocation within the State without first obtaining a license therefor," is not violative of the 14th amendment of the Constitution of the United States, or of section 31 of the Constitution of Alabama; and said act is, therefore, valid.

APPEAL from the County Court of Elmore.

Tried before the Hon. H. J. LANCASTER.

The facts of the case are sufficiently stated in the opinion.

FRANK W. LULL and EDWIN F. JONES, for appellant, cited *Joseph v. Randolph,* 71 Ala. 499; *State v. Goodwin,* 33 W. Va. 179; *Marion v. Chandler,* 6 Ala. 899; *Ex Parte Burnett,* 30 Ala. 461; *State v. Moore,* 113 N. C. 697.

MASSEY WILSON, Attorney-General, for the State, cited *Capital etc. Co. v. Board of Revenue,* 117 Ala. 303; *Phoenix etc. Co. v. Fire Department,* 117 Ala. 631; *Ex Parte City Council of Montgomery,* 64 Ala. 463; *Osburn v. Mayor,* 44 Ala. 493; *Nathan v. Louisiana,* 8 Howard (U. S.) 73 and notes.

SIMPSON, J.—The defendant (appellant) was tried and convicted of the offense of engaging in or carrying on the business of an emigrant agent, under the statute. Acts 1903, p. 344.

Appellant's contention is that this act is violative of the XIV amendement to the Constitution of the United States, and also of § 31 of the Constitution of Alabama, providing that "emigration shall not be prohibited."

We hold that, in so far as the XIV amendment to the Constitution of the United States is concerned, the Supreme Court of the United States has settled this question, in favor of the constitutionality of an act requiring a license tax on emigration agents.—*Williams v. Fears,* 179 U. S. 270; see also same case, 35 S. E. Rep. 699.

We do not think that, in so far as this right of the State to require a reasonable license tax is concerned, there was any material difference between that case and the one now under consideration. As said in that case, so in this, under the act in question, "If it can be said to affect the freedom of egress from the State, or the freedom of contract, it is only incidentally and remotely. The individual laborer is left free to come and go at pleasure, and to make such contracts as he chooses, while those whose business it is to induce persons to enter into labor contracts and to change their location, though left free to contract, are subjected to taxation in respect to that business as other citizens are."—(P. 274-5).

For the same reason it cannot be said that there is any violation of the emigration feature of the Constitution of Alabama.

It is undoubtedly true, as insisted upon by appellant, that the business of an emigration agent, is not one of those occupations which are recognizezd as so injurious to the public as to justify discriminative legislation, under the police power of the State, with a view of suppressing the same.

The license required, in this case, if sustained at all, must be under the general power to tax occupations, and, as decided by this court in other cases, while it is true that the constitutional provision as to uniformity of taxation does not apply to the license tax on occupations, and while absolute uniformity is unattainable, yet, if there is such great discrimination between members of the same class, in the matter of levying license

taxes as to indicate an intention to burden and crush out one, it will be declared unconstitutional.

Under our statutes all occupation taxes are evidenced by a receipt which is called a license, so that we do not think that the fact that this is spoken of in the act, as a license, renders the act any the less a tax on the occupation for revenue.

Nor does the fact that it is provided for by a special act, in place of being embodied in the general revenue bill, affect that question. Many items of revenue are included in the general revenue bill, as a matter of convenience, but it is just as competent for the legislature to provide for revenue by separate bills.

We understand the principle to be that the State can divide the various business vocations into classes for the purpose of levying occupation taxes, and levy varying amounts on the different occupations, the limitation being, 1st, That there must be uniformity among members of the same class (and the classification must be reasonable) ; and 2d, The State cannot levy such an occupation tax on any useful or harmless occupation, as will amount to a prohibition of the same. And, when we say harmless occupation, we do not mean to prescribe an occupation because one man, in the lawful pursuit of it, may draw away business from another, or outrun him in the race for patronage or trade, but harmless in the sense of not being demoralizing in its tendency, injurious to the health of the people, promotive of disorder, or interfering with the rights of other citizens to be protected in their constitutional privileges.

We do not interpret the statute in question as making it an offense for a person living near the border line of the State to employ laborers for service in his own business beyond the limits of the State, as contended by counsel for appellant.

The title of the act, as well as the first section, indicate that it is only the person engaged in the business of an emigrant agent; the second section (which is the one upon which the contention rests) defines an "Emigrant Agent" as "any person *engaged* in hiring," etc., and the fourth section refers only to "any person *doing the business* of an emigrant *agent*."

[Skinner v. The State.]

A man who is hiring laborers for himself is not an "*agent,*" and in so hiring he is not "doing the business of an emigrant *agent.*"

The only question then, which remains to be decided in this case is whether or not, in this case, the license tax imposed is so excessive and unreasonable as to amount to a prohibition of the business, or (in the language of the Supreme Court of the United States, in *Lowton v. Steele,* 125 U. S. 137)," under the guise of protecting the public interests, arbitrarily to interfere with private business, or impose unusual and unnecessary restrictions upon a lawful occupation."

The record in this case does not furnish the court with any data from which it can say that the license tax levied in this case, is so discriminative as to be beyond the constitutional power of the legislature to exact. The amount of the license tax is the same as that sustained by the Supreme Court of Georgia and of the United States in the case of *Williams v. Fears, supra.* See also *Ex parte Sykes,* 102 Ala. 173.

The judgment of the court is affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.