### 3026.  OLDKNOW *v.* CITY OF ATLANTA.

1. A municipal ordinance, which makes it the duty of proprietors, lessees, or other persons in charge of opera-houses or theaters, moving-picture shows, or vaudeville performances or similar exhibitions, to require ladies who attend the performances in such places to remove their hats before the performance begins and to keep them off during the performance, reasonably construed, is within the police power of the municipality, and is authorized under a "general welfare clause" in its charter which confers upon it the power to pass ordinances "for the prevention and punishment of disorderly conduct, and conduct liable to disturb the peace and tranquillity of any citizen or citizens thereof," and such as "may seem to [it] proper for the security of the peace, health, order, and good government of said city."

2. The finding of the recorder is supported by evidence.

DECIDED AUGUST 4, 1911.

Certiorari; from Fulton superior court—Judge Bell. October 11, 1910.

*Hudson Moore,* for plaintiff in error.

*J. L. Mayson, W. D. Ellis Jr.,* contra.

RUSSELL, J. William Oldknow was convicted in the recorder's

court of the City of Atlanta of a violation of a city ordinance which makes it "the duty of the proprietor, lessee, or other person in charge of every opera-house, or theater, or moving-picture shows, or vaudeville performances, or similar exhibitions in the City of Atlanta, to require ladies who attend performances in such theater or opera-house to remove their hats before the performance begins and to keep them off during the performance." On certiorari the superior court affirmed the judgment, and Oldknow excepted. He challenges the legality of the ordinance in question on various grounds, such as that no authority in law existed for the enactment of such an ordinance, that it was discriminatory and class legislation, in that it did not apply to all subjects alike, and that the ordinance, if otherwise valid, was wholly unreasonable, because it imposed a penalty for an offense over which the defendant had no control and which it was powerless to prevent; in other words, that the ordinance was not within the police power of the city under its charter. He further insists that, conceding the legality of the ordinance, the evidence in this case fails to show a violation of its terms, reasonably construed.

It will hardly be questioned that the city has the power to regulate all classes of exhibitions such as are conducted for the recreation and amusement of the public, and that the police power of the city is properly exercised over places of public resort, although owned and operated by private citizens. 28 Am. & Eng. Enc. Law, 116, and cases cited. "Places to which people come in numbers and indiscriminately by invitation or license of the owner and generally for his benefit, such as public conveyances, railroad depots, wharves, inns, restaurants, and theaters, may be said to be affected with public interest. The police power is duly exercised not only for safety and health, but sometimes also for public comfort. So in directing the heating of cars or depots, restricting the number of passengers to be carried in a car, regulating the landing of vessels at wharves, and *requiring women attending theatrical performances to remove their hats.*" Freund on Police Power, § 175.

Generally speaking, it is well settled that the legislature has the same authority over the theatrical business as over any other lawful private business. Besides the requirement of a license, it is authorized to regulate the conduct of places of public amusement, where the public health, safety, morality, comfort, and tranquillity

are concerned and where the general welfare requires that there shall be such regulation. This is an exercise of police power, which has always been declared by the courts to be that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety, and welfare of society. The "general welfare clause" contained in the charter of the City of Atlanta confers upon the municipality authority to pass ordinances "for the prevention of disorderly conduct and conduct liable to disturb the peace and tranquillity of any citizen," and such as "may seem to [it] proper for the security of the peace, health, order, and good government of said city." City Code, § 33. Under this general welfare clause we think the State conferred upon the city the authority to adopt the ordinance in question, provided it is an appropriate measure calculated to promote the comfort, safety, and welfare of the citizens generally, and their peace, tranquillity, and comfort in places of public amusement.

The plaintiff in error in this case was proprietor of what is known as a "moving-picture show" in the city of Atlanta. This character of amusement has become one of the most popular methods of recreation and pleasure, and is resorted to almost universally by all classes of citizens. The business is clearly lawful, as well as entertaining, and sometimes instructive, and the public has the right to resort to these places, and, while there, to be protected in the full enjoyment furnished by this class of entertainment. It is a matter of common knowledge that the style of modern hats worn by ladies, if permitted to be worn by them while the performance is in progress, will prevent those who may be so unfortunate as to sit in the rear of ladies from seeing the stage or from enjoying the spectacular entertainment there presented, which is a most important part of the performance. Nothing more greatly mars the pleasure of an entertainment, or disturbs the comfort of those who may be so unfortunate as to be located behind these obstructions, or more irritably disturbs or interferes with the comfort of audiences attending theaters or moving-picture shows, than these large hats worn by ladies, which in many cases completely obstruct the view of the performance. The spectacular is the principal part of moving-picture shows. The evil aimed at by this ordinance, the mischief it was intended to prevent, and the nuisance it was passed to abate, all clearly show that the ordinance in question is within

the police power of the city and is authorized by the "general welfare clause" of its charter.

Nor do we think that the ordinance is an unwarranted interference with the right of the citizen to conduct his private business in such manner as he may see proper. All places conducted by private citizens where the public are congregated are protected by public authority, and those located in the city are under police surveillance. This is not an interference with the right of the proprietor to operate his private business, but is simply a requirement that he shall operate it in such manner as not to disturb the public tranquillity, peace, and comfort of those who may be assembled there. The proprietors, or those who operate such establishments, have themselves the right to make any reasonable rules and regulations for the orderly conduct of such places, and, where they can not effectually do so, it becomes the duty of the municipality to interfere and make such regulations as will secure the orderly conduct of such places and the peaceful and full enjoyment of those who have a right to assemble at such places. Neither is the ordinance unreasonable because it imposes upon the proprietor a burdensome duty which he can not enforce. If the ordinance is lawful, he can enforce it by simply calling to his aid the police of the city to arrest any lady who refuses to obey the regulation and remove her hat. Besides, it is a matter of common knowledge that the ladies of our country are always amenable to reasonable requests conducing to the comfort of others.

The ordinance is not discriminatory because it does not include men within its operation. Men do not need any regulation on this subject. Public opinion, which demands that a man shall take off his hat in the presence of ladies, is sufficient, and does not need the aid of any police regulation. If it were the fashion for men to wear hats of such description as those worn by ladies in this day and to keep them on in public places, could it be doubted that there would be a loud and vociferous demand on the part of the ladies for the abatement of such a nuisance? But we will not extend the discussion. We hold that the ordinance in question, reasonably construed, is clearly within the police power of the City of Atlanta, that it does not discriminate, that it does not impose on the proprietor of such places any unnecessary or unusual hardship, and that it is in the interest of public order and comfort.

It is contended that the evidence fails to show a violation of the ordinance; that the ladies present did· remove their hats during the performance, except two, who sat on the rear' seat; and that these two put their hats on preparatory to leaving the house, and just before they left. If this was all the evidence, we do not think it would show a violation of the ordinance, reasonably construed. The purpose of the ordinance is to give to all in the house. a full opportunity to see all the performance, and to prevent the shutting off of the view of the stage by the enormous hats worn by the women. The terms of the ordinance are that the hats should be kept removed during the performance. It is not intended to prevent the ladies from replacing their hats inside the house, or while in their seats, if they do so preparatory to leaving, and do in fact leave the house. This is not all the evidence. It is true that only two ladies kept their hats on, but they remained in their seats with their hats on for nearly an hour during the performance. Besides, there is some evidence from which it might have been inferred that there was no attempt to enforce the ordinance until the proprietor discovered the presence of the author of the ordinance, who presumptively reported the violation of the ordinance. While the direct and positive evidence did not show a very flagrant disobedience of the law, there was enough to warrant conviction.

*Judgment affirmed.*