The City of Chicago, Plaintiff in Error, *vs.* The Drake Hotel Company, Defendant in Error.

*Opinion filed June 22, 1916—Rehearing denied October 5, 1916.*

1. Municipal corporations—*what amusements cannot be prohibited.* A city has no power, nor can the legislature confer power upon it, to prohibit all amusements, but such power is confined to such amusements as come within the legitimate operation of the police power.

2. Same—*a city cannot prohibit free dancing in restaurants.* A city has no power absolutely to prohibit the owner of a public restaurant or other public place of refreshment from allowing his patrons to dance while the place is open to the public for refreshments unless he shall charge a fee for admission or for the privilege of dancing and take out a dance hall license.

3. Same—*when Chicago amusement ordinance does not apply.* The Chicago ordinance dividing amusements into classes and requiring the taking out of a license does not apply to amusements where the public is not required to pay any fee or compensation in order to participate in the same.

Dunn and Cartwright, JJ., dissenting.

Writ of Error to the Municipal Court of Chicago; the Hon. John Courtney, Judge, presiding.

Samuel A. Ettelson, Corporation Counsel, (Leon Hornstein, and Harry L. Brin, of counsel,) for plaintiff in error.

Mayer, Meyer, Austrian & Platt, (Levy Mayer, and Alfred S. Austrian, of counsel,) for defendant in error.

Mr. Justice Cooke delivered the opinion of the court:

The city of Chicago instituted suit in the municipal court of Chicago against the Drake Hotel Company, a corporation, to recover a penalty for the violation by the defendant of the following provision of an ordinance of the city: "No person, firm or corporation, either as owner,

lessee, manager, officer or agent of a restaurant or public place of refreshment conducted in any other place than a licensed dance hall, shall conduct a dance of the patrons therein or suffer or permit the patrons of same to indulge in dancing while the said place or the room in which the said dancing is indulged in is open to the general public as a place where the public may purchase refreshments." The penalty provided by the ordinance for a violation of the above provision is a fine of not less than $5 nor more than $100 for each offense. A hearing was had before the court upon the defendant's motion to strike the plaintiff's statement of claim, which set up the cause of action, from the files, to quash the complaint and to dismiss the suit. Upon the hearing of this motion it was stipulated that the motion be treated as a motion by the defendant, at the close of all the evidence, to direct a verdict in its favor, and the following stipulation signed by the parties was presented for consideration by the court in passing upon the motion:

"It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, that the defendant herein is the manager of a restaurant and permits its patrons to indulge in dancing while the said restaurant is open to the general public; that said defendant charges no admission fee of any kind to its said restaurant and none for the privilege of dancing in its said restaurant; that the dancing permitted in said restaurant by said defendant has been and is orderly, dignified, quiet, respectable, decent and peaceful and in no sense injurious to the public morals, welfare or health and in no sense is a public nuisance."

In addition to the stipulation the city offered in evidence an ordinance of the city dividing, for the purpose of licensing, "all theatricals, shows and amusements offered, operated, presented or exhibited for gain or for admission to which the public is required to pay a fee," into twenty-one classes, and providing, under a penalty, that "no

person or corporation, either as owner, lessee, manager, officer or agent, shall give, conduct, produce, present or offer for gain or profit any of the foregoing entertainments without a license issued for that purpose." The sixth class includes "dances  *  *  *  carried on or engaged in, in any hall, structure or building." The city also offered evidence showing that the defendant was the owner and manager of the Blackstone Hotel, in the city of Chicago, and of the restaurant therein, and on January 13, 1915, suffered and permitted the patrons of said restaurant to indulge in dancing while the restaurant was open to the general public as a place where refreshments might be purchased, which restaurant was not a licensed dance hall. In addition to the matters shown by the stipulation, the defendant proved, and the court found, that dancing, as conducted in restaurants and public places of refreshment in the city of Chicago, "has always been and is orderly, dignified, quiet, respectable, decent and peaceful and in no sense was or is a public nuisance, but was and is a reasonable and harmless method of amusement for the public in said city."

The court quashed the complaint and ordered the statement of claim stricken from the files. The city refusing to file an amended complaint or statement of claim, the suit was dismissed and the defendant was discharged. The city has brought the record here for review by writ of error, the trial judge having certified that the validity of a municipal ordinance is involved and that in his opinion the public interest requires that the cause be taken directly to this court.

The only controversy here is whether the city possessed the power to pass the ordinance which defendant in error is charged with having violated. The city contends that the ordinance is proper municipal legislation under and by virtue of clause 41 of section 1, article 5, of the Cities and Villages act, which confers upon the city council in cities the power "to license, tax, regulate, suppress and prohibit

hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure." One of the contentions made by the defendant in error is that this provision of the statute does not confer power upon the city council to license dance halls, but we do not consider it necessary to pass upon that question. The city in its argument assumes that the effect of the ordinance which defendant in error is charged with having violated is to require defendant in error to obtain a license from the city authorizing it to conduct its restaurant as a dance hall before permitting the patrons of the restaurant to indulge in dancing while the restaurant is open to the general public as a place where refreshments may be purchased. That such is not the effect of the ordinance, when considered alone, is apparent from a mere reading of the same. By its express terms it is an absolute prohibition against permitting the patrons of a restaurant to indulge in dancing while the same is open to the general public as a place where the public may purchase refreshments, unless the restaurant is conducted in a licensed dance hall. In an apparent attempt to show that this ordinance should not be considered alone in determining its purpose and effect, the city offered in evidence another ordinance providing for the licensing of certain amusements, including dances carried on or engaged in in any hall, structure or building. That ordinance, however, relates only to amusements "offered, operated, presented or exhibited for gain or for admission to which the public is required to pay a fee," and does not apply to amusements where the public is not required to pay any fee or compensation in order to participate in the same. The necessary conclusion to be deduced from this record is that under the ordinances of the city of Chicago, if valid, the owner of a restaurant or public place of refreshment cannot permit his patrons to indulge in dancing while the restaurant or place of refreshment is open to the public for refreshments, un-

less he charges them a fee for the privilege of dancing. That the city has no power to compel the owner of a restaurant to charge a fee or compensation for any privilege that he may see fit to extend to his patrons is too clear to permit of argument. The matter here presented for determination, therefore, resolves itself into the question whether the city council of the city of Chicago has the power to prohibit dancing in restaurants by the patrons thereof where no fee is charged for the privilege. The question whether the city council has the power to regulate dancing in such restaurants is not presented.

For the purpose of this decision it may be conceded that the legislature has by clause 41 of section 1, article 5, of the Cities and Villages act attempted to confer upon the city council the power to prohibit amusements and that dancing is one of such amusements. The legislature, however, could confer upon the city council no greater power than the legislature itself possessed, and we have recently held that "the legislature had not the power to pass an act prohibiting all amusements, but only such as came within the legitimate exercise of the police power." (*Nahser* v. *City of Chicago,* 271 Ill. 288.) In *City of Chicago* v. *Netcher,* 183 Ill. 104, we said: "In order to sustain legislative interference with the business of the citizen by virtue of the police power it is necessary that the act should have some reasonable relation to the subjects included in such power. If it is claimed that the statute or ordinance is referable to the police power the court must be able to see that it tends, in some degree, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. If it is manifest that the statute or ordinance has no such object, but, under the guise of a police regulation, is an invasion of the property rights

of the individual, it is the duty of the court to declare it void." To the same effect is *People* v. *Weiner*, 271 Ill. 74.

There is nothing necessarily harmful in permitting the patrons of a restaurant to dance while the restaurant is open to the general public as a place where the public may purchase refreshments. On the contrary, the evidence here shows, and the municipal court found, that dancing as conducted in restaurants and public places of refreshment in the city of Chicago, including the restaurant conducted by defendant in error, always has been and is "orderly, dignified, quiet, respectable, decent and peaceful" and in no sense was or is a public nuisance, and was and is a reasonable and harmless method of amusement for the public in said city. Because the privilege may be abused is no reason why it shall be denied. *Village of DesPlaines* v. *Poyer*, 123 Ill. 348.

The ordinance in question is clearly an invasion of the property rights of individuals, and is therefore unreasonable and void.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*

DUNN and CARTWRIGHT, JJ., dissenting:

We assume without discussion, as the opinion of the court assumes, that public dancing is an amusement the right to license, tax, regulate, suppress and prohibit which the legislature has attempted to confer on the city council. In the judgment of the city council the tendency of unregulated public dancing in restaurants and public places of refreshment is vicious and inimical to the public morals, therefore the council enacted that public dancing should not be permitted in restaurants and public places of refreshment conducted elsewhere than in a licensed dance hall. Is the tendency of unregulated public dancing toward the corruption of morals? Does the prohibition of public dancing in unlicensed places tend to prevent the injury to pub-

lic morals? The city council's affirmative answer to these questions is the basis of the ordinance in controversy. Perhaps there may be men who would arrive at a different conclusion, but it cannot be said that this decision by the legislative authority, of a question clearly within its police power, is so manifestly unreasonable that the judicial authority should set it aside. It may be reasonably assumed that no one doubts that the regulation of public dancing is within the legitimate exercise of the police power. It seems equally clear that the ordinance in question is adapted to secure proper supervision of public dancing by prohibiting it unless licensed. The ordinance must therefore be held valid unless it unreasonably interferes with private rights.

It is true that there is nothing necessarily harmful in permitting the patrons of a restaurant to dance while the restaurant is open to the general public. It is equally true that such dancing is not necessarily a harmless method of amusement. It may be conducted in such a way as to be offensive to public morals. Though dancing as conducted in restaurants and places of amusement in Chicago fortunately has always been "orderly, dignified, quiet, respectable, decent and peaceful," as testified by the witnesses and certified in the statement of facts, it is not necessarily so. It merely happens that the vicious element has not yet obtained a foothold in the restaurants and places of amusement of that city. It is said on the authority of *Village of DesPlaines* v. *Poyer,* 123 Ill. 348, because the privilege may be abused is no reason why it shall be denied. It is, however, a very good reason why it should be regulated, and even denied, except upon conditions which will prevent the abuse, and there is nothing in *Village of DesPlaines* v. *Poyer* to the contrary. The ordinance there simply prohibited open-air dances.

It may be conceded that the city has no power to compel the owner of a restaurant to charge a fee for the privilege of dancing extended to its patrons. This ordinance

attempts no such compulsion. It prohibits the extension of the privilege of public dancing, whether free or for pay, in restaurants not conducted in licensed dance halls. An ordinance of the city provides for the licensing of dances in any hall, structure or building. Although this ordinance relates only to amusements "offered, operated, presented or exhibited for gain, or for admission to which the public is required to pay a fee," there is nothing to prevent the defendant in error from obtaining a license for a dance hall. Whether it charges all persons or some persons, only, much or little or nothing for dancing in such hall, or charges some persons more and others less, is a matter with which the city does not concern itself. Dancing in such licensed hall is regulated, and that is the object of the ordinance in question. It seeks to regulate public dancing in restaurants and public places of refreshment by requiring the observance in such places of the regulations prevailing in the case of licensed dance halls.

An act not in itself harmful, immoral or illegal may be declared illegal by a legislative enactment. In the exercise of the police power an act hurtful to the comfort, safety or welfare of society may be prohibited by law even though the prohibition invades the right of liberty or property of an individual. A statute or ordinance having this effect must have a reasonable relation, and be appropriate, to the prevention of something injurious or the promotion of something beneficial to the public welfare. Such an enactment does not violate the constitutional provision which protects against deprivation of property without due process of law though it prohibits and makes criminal an act not in itself immoral. Particular acts may not themselves be immoral, but the tendency of what is often done in the performance of those acts may be towards what is immoral. If the law-making power, considering the circumstances which frequently attend the doing of such acts, thinks that certain admitted evils cannot be prevented unless these acts

are prohibited, the courts cannot interfere unless, looking through mere forms and at the substance of the matter, they can say that the enactment made to protect the public morals has no right or substantial relation to that object but is a clear, unmistakable infringement of rights secured by the fundamental law. (*Booth* v. *People*, 184 U. S. 425; 186 Ill. 43.) The individual must often surrender natural rights for the general good. The constitutional right to bear arms does not justify the carrying of a concealed weapon in violation of a statute, however justifiable such an act might otherwise be. The right of a woman to earn a living and of another to employ her does not justify her employment, contrary to the provisions of a municipal ordinance, to serve customers in a place where intoxicating liquors are sold, however orderly the place and virtuous the woman. (*Bergman* v. *Cleveland*, 39 Ohio St. 651.) Nor does such right justify her employment beyond the number of hours limited by statute for certain occupations, however able and desirous to work she may be. (*People* v. *Elerding*, 254 Ill. 579.) Cotton in the seed is property, but a statute prohibiting its sale and forbidding its transportation after sunset and before sunrise has been held valid. (*Davis* v. *State*, 68 Ala. 58.) The possession of certain game later than five days after the expiration of the open season for such game, though killed in another State where such killing was lawful and shipped to a purchaser in this State, may lawfully be prohibited. (*Magner* v. *People*, 97 Ill. 320.) So the prohibition of the sale of certain kinds of fish, though caught without the State where such taking was lawful, was held within the legislative power as a means of enforcing the prohibition of the taking of such fish within the State otherwise than by hook and line. (*People* v. *Booth Fisheries Co.* 253 Ill. 423.) In *Kettering* v. *City of Jacksonville*, 50 Ill. 39, in a prosecution for the violation of an ordinance prohibiting the sale of liquor and beer, it was insisted that the beer sold must be shown to be intoxi-

cating, but the court held otherwise, saying: "The city did not see proper to confine the prohibition to beer of an intoxicating quality, and we have no right to interpolate such a qualification. The city council may have supposed it important to prevent the establishment of any species of beer shops in view of the fact that intoxicating drinks are so often sold in places which openly deal only in harmless beverages." The same principle applies to the ordinance in question. The city council, for the suppression of the evils arising from suggestive and immoral dancing, may have thought it necessary to prevent all public dancing in restaurants and public places of refreshment not conducted in licensed dance halls. If the ordinance tends to the suppression of immoral dancing, the fact that it may interfere in some cases with dancing which is not immoral does not render it invalid.