(116 So. 369)

**HALE v. STATE.** (4 Div. 366.)

Supreme Court of Alabama. Jan. 28, 1928.

Rehearing Denied April 5, 1928.

**1. Constitutional law ⬤⇒48—Presumptions favor validity of exercise of police power.**

There is distinction between statute enacted as exercise of police power and one in which taxing power is exercised in such manner as not to be oppressive and unconstitutional, and presumptions favor validity of such enactments, and burden of showing invalidity is upon one attacking statute.

**2. Constitutional law ⬤⇒48—To justify interference by courts with legislative enactment regulating business, excessive and oppressive abuse of power resulting in prohibition of useful and harmless business must be shown.**

To justify interference by court with enactment under police or taxing power regulating or taxing lawful business or with enactment prohibiting, regulating, or discouraging business having tendency to hurt public morals, flagrant case of excessive or oppressive use of legislative powers resulting in prohibition of useful and harmless business or trade must be shown.

**3. Licenses ⬤⇒7(9)—Prima facie tax is reasonable.**

Prima facie tax is reasonable.

**4. Licenses ⬤⇒7(9)—Reasonableness of license tax imposed upon public by law cannot be determined by extent of business of single party.**

Reasonableness of license tax imposed by law cannot be determined by extent of business of single party for reasons unusual or extraordinary, such as competition, negligence, extravagance, or misfortunes affecting merely extent of profits and earnings of single business.

**5. Theaters and shows ⬤⇒2—Statute licensing transient vaudeville show operating in tent or otherwise held valid exercise of police power (Acts 1927, p. 156, § 16).**

Where statute (Acts 1927, p. 156, § 16) was enacted which placed heavy license fee upon transient theatrical and vaudeville shows operating in tents or otherwise, *held* that enactment was valid exercise of police power as expressive of legislative conception of necessity for protection of the peace of state against transient or fugitive entertainments.

―――――

**6. Theaters and shows ☜2—Test in determining validity of regulation of transient vaudeville shows under police power was what show may be or might become in future as affecting regulation (Acts 1927, p. 156, § 16).**

In determining whether transient vaudeville show, prohibited under license by Acts 1927, p. 156, § 16, had tendency to injure morals or welfare of people, test was what such show might be or become in future as affecting its regulation or prohibition under police power.

**7. Constitutional law ☜208(6)—Taking common knowledge of effect of transient vaudeville show on public morals may be sufficient basis upon which to rest classification in enacting statute requiring license (Acts 1927, p. 156, § 16).**

Where Legislature enacted statute (Acts 1927, p. 156, § 16) placing license fee upon transient vaudeville and theatrical shows operating in tents or otherwise, taking common knowledge of effect on public morals and that show moves to districts where people are without police protection, may be sufficient basis upon which to rest classification.

### On Application for Rehearing.

**8. Constitutional law ☜212—Equality clause does not deprive state of its police power, and it may pass reasonable laws for protection of public welfare (Const. U. S. Amend. 14).**

Equality clause of Fourteenth Amendment to Federal Constitution does not deprive state of its police power to pass statutes for protection of public health, safety, and morals, and in such matters Legislature has wide discretion so long as such acts have equal and uniform application to all persons similarly situated, but when statute or ordinance does not apply equally and uniformly to all who are similarly situated the same is unreasonable or has not substantial relation to object of act, and is for that reason offensive to Fourteenth Amendment.

**9. Constitutional law ☜230(3)—Licenses· ☜ 7(3)—Statute licensing transient vaudeville shows operating in tents or otherwise held not unconstitutional as denying equal protection of laws (Acts 1927, p. 156, § 16; Const. U. S. Amend. 14).**

Acts 1927, p. 156, § 16, placing heavy license fee upon transient theatrical and vaudeville shows operating in tents or otherwise, *held* not to offend equality clause of Const. U. S. Amend. 14.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

H. D. Hale was convicted of conducting a vaudeville, theatrical show without a license, and he appeals. Affirmed.

Merrill & Field, of Anniston, and Farmer, Merrill & Farmer, of Dothan, for appellant.

License taxes must not be imposed upon such terms and conditions as the virtual prohibition of a useful occupation or business. Otis v. Parker, 187 U. S. 606, 23 S. Ct. 168, 47 L. Ed. 323; 37 C. J. 186, 187; 26 R. C. L.

697; Ex parte Burnett, 30 Ala. 461; Kendrick v. State, 142 Ala. 43, 39 So. 203; W. U. T. Co. v. Decatur, 16 Ala. App. 679, 81 So. 199; Id., 202 Ala. 593, 81 So. 205. A business cannot be taxed to the extent that it cannot exist unless it be a business of such type that it is harmful to the public and subversive of the morals of the people. The type of business here involved is not subject to condemnation on that account. People v. Rawley, 231 Mich. 374, 204 N. W. 137, 39 A. L. R. 1381. Authorities, supra.

Charlie C. McCall, Atty. Gen., and W. H. Mitchell, of Florence, for the State.

The license tax charged does not amount to a prohibition of the tent show business. Ex parte Sikes, 102 Ala. 173, 15 So. 522, 24 L. R. A. 774. As to occupations or forms of business which belong to a certain class which, while tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to the public, license fees or taxes may be so imposed as to discourage and even amount to a prohibition of them. Republic I. & S. Co. v. State, 204 Ala. 469, 86 So. 65; 37 C. J. 188, 193; Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43. The business here licensed is subject to the police power because of its inherent quality of menace to the public welfare, public morals, and good order. Dreyfus v. Montgomery, 4 Ala. App. 270, 58 So. 730; Ex parte Rowe, 4 Ala. App. 254, 59 So. 69; Mehlos v. Milwaukee, 156 Wis. 591, 146 N. W. 882, 51 L. R. A. (N. S.) 1009, Ann. Cas. 1915C, 1102; People v. Wilber, 198 N. Y. 1, 90 N. E. 1140, 27 L. R. A. (N. S.) 357, 139 Am. St. Rep. 809, 19 Ann. Cas. 626; Chicago v. Drake Hotel Co., 274 Ill. 408, 113 N. E. 718, L. R. A. 1917A, 1170; Oldknow v. Atlanta, 9 Ga. App. 594, 71 S. E. 1015; Xydias Amusement Co. v. Houston (Tex. Civ. App.) 185 S. W. 415; State v. Loden, 117 Md. 373, 83 A. 564, 40 L. R. A. (N. S.) 193, Ann. Cas. 1913E, 1300.

THOMAS, J. The prosecution of defendant for doing business without a license is a test of the validity of section 16 of the Revenue Act of July 22, 1927. Gen. Acts of 1927, p. 156. The suggestion of invalidity by appellant is that the tax is confiscatory, prohibitive, and illegal.

The statute in question (section 16 of the General Revenue Act) concludes with the proviso that the section "shall not apply to any show operating in a theater regularly licensed"; and section 79 concludes as follows:

"If any section, clause, provision or portion of this act shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, clause or provision or portion of

this act which is not in and of itself unconstitutional."

Thus was made separable a proviso, section, or clause or any other provision or portion of the enactment that may be held to be invalid or unconstitutional by said last expression of the legislative will.

[1] There is a distinction to be made between a statute in the exercise of the police power and that in which the state exercises its taxing power in such wise as not to be oppressive and unconstitutional. The presumptions obtaining in favor of such enactments, and the burden of proof in an attack on the statute were recently considered by this court. Standard Chem. Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522.

[2] It is the duty of this court to bear in mind the distinction between the useful and harmless businesses, trades, and occupations essential to the liberty of the citizen in pursuit of happiness, and that class of human endeavor or enterprise which, while tolerated, is recognized as being or having a tendency that is productive of disorder, injurious to the public, or hurtful to public morals, by reason of its debilitating or dissipating tendencies or influences on the life of the people, old or young. Republic I. & S. Co. v. State, 204 Ala. 469, 86 So. 65; Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43. And in this there is the power and authority of government to make valid regulations and to levy a proper license tax upon the conduct of lawful and needful business under the taxing and police power, and the right of prohibition, regulation, or discouragement of the last-named class productive of disorders or hurtful to public morals. The presumption of lawful enactment obtains and to justify interference by the courts, a *flagrant* case of excessive and oppressive abuse of legislative power, resulting in the prohibition of a useful and harmless occupation, business, or trade, must be shown. Denson v. Ala. F. & I. Co., 198 Ala. 383, 73 So. 525; Briggs v. B. R. L. & P. Co., 188 Ala. 262, 66 So. 95.

It should be stated at the outset, as to a license such as we have before us, that in the case of Woco Pep Co., infra, is the declaration of taxing and licensing ordinances challenged as excessive, and that the same should have been given a reasonable time in its due administration to observe and fully obtain the result upon the class of businesses subject thereto, and the public who is to absorb or assimilate such imposed burden of government; that without such trial or due application the courts are ordinarily not able to say that a license tax is confiscatory.

[3, 4] Prima facie a tax is reasonable (Gamble v. City of Montgomery, 147 Ala. 682, 39 So. 353; Williams v. City of Talladega, 164 Ala. 633, 51 So. 330); and the reasonableness,

as a license tax, imposed by law, cannot be determined by the extent of the business of a single party so engaged, for reasons unusual or extraordinary, as competition, negligence, extravagance, or misfortunes affecting merely the extent of profits and earnings of a single business (Woco Pep Co. v. City of Montgomery, 213 Ala. 452, 459, 105 So. 214; N. C. & St. L. Ry. v. City of Attalla, 118 Ala. 362, 24 So. 450; Williams v. City of Talladega, 164 Ala. 633, 649, 51 So. 330; Id., 226 U. S. 404, 417, 33 S. Ct. 116, 118, 57 L. Ed. 275, 280; Atlantic, etc., Co. v. Philadelphia, 190 U. S. 160, 23 S. Ct. 817, 47 L. Ed. 995). Like reasons would require a sufficient time for a proper test of the provisions and the result of a general statute imposing a license tax, in its effect upon a useful and harmless business, duly and economically administered, and not embarrassed by such extraneous influences.

In the case of Ex parte Sikes, 102 Ala. 173, 15 So. 522, 24 L. R. A. 774, an effort of a defendant to discharge the burden upon him under the law as the party attacking a liquor license, to show that the same was prohibitory, it was declared:

"We do not think there is anything in this showing, which reasonably satisfies the mind that the license required is prohibitory in a business view."

In that case it was not shown what salaries or other reasonable and necessary expenses were incurred in a right and proper conduct of the business, and the fact that some dealers did an unprofitable business was not thought to be sufficient to strike down the license tax imposed. The record in the Sikes Case and in this case are likewise meager as to the amounts paid in—of salaries and actual or necessary operating expenses, etc. It may not be necessary that we discuss more in detail the facts before us, for the reason to which we advert.

[5] The classification employed is well founded, is not arbitrary and illegal; for the business so taxed is of the kind or class which, under certain reasonable limitations of time and place, are tolerated, yet are recognized as probably susceptible to debilitating influences and dissipating tendencies hurtful to public morals, and therefore "productive of disorder or injurious to the public." City of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Standard Chem. Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522; Gamble v. City of Montgomery, 147 Ala. 682, 39 So. 353. That is to say, the transient vaudeville and theatrical shows, operating temporarily in different places, in tents or otherwise, were the subject of the due and valid exercise of the police power. See Goldstein's Case for authorities, 207 Ala. 569, 575, 93 So. 308. The courts are generally content to assign or not assign the subject and classification within or beyond the pale of police pow-

er without an attempt at specific definition. In Lochner v. New York, 198 U. S. 45, 49, 25 S. Ct. 539, 546, 49 L. Ed. 937, 944 (3 Ann. Cas. 1133), Mr. Justice Peckham said:

"It is impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power for the purpose of protecting the public health or welfare, are, in reality, passed from other motives. We are justified in saying so when, from the character of the law and the subject upon which it legislates, it is apparent that the public health or welfare bears but the most remote relation to the law. The purpose of a statute must be determined from the natural and legal effect of the language employed; and whether it is or is not repugnant to the Constitution of the United States must be determined from the natural effect of such statutes when put into operation, and not from their proclaimed purpose. Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455, 3 Interst. Com. Rep. 185; Brimmer v. Rebman, 138 U. S. 78, 11 S. Ct. 213, 34 L. Ed. 862, 3 Interst. Com. Rep. 485. The court looks beyond the mere letter of the law in such cases. Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220."

In Western Union Tel. Co. v. City of Decatur, 16 Ala. App. 679, 81 So. 199 (approved by this court, 202 Ala. 593, 81 So. 205), is contained the declaration:

"It is universally recognized that the power to tax for revenue is essentially an attribute of sovereignty conferred by the people, through the Constitution, on the state, and vested in the legislative department, which it may exercise within constitutional limitations without restraint or judicial supervision. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; Barefield v. State [16 Ala. App. 491] 79 So. 396; Dunlap v. State [16 Ala. App. 440] 78 So. 638. And the courts recognize the right of the state to so combine the exercise of this power with the power of police as to embarrass and destroy businesses and occupations recognized as being hurtful to public morals, productive of disorder, or injurious to the public good. City of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Cooley on Taxation (2d Ed.) p. 20; Tiedeman on Limitation of Police Power, 273, 277, 278. However, this power may not be so used as to useful and harmless trades and occupations so essential to the liberty of the citizen in the pursuit of happiness."

See 37 C. J. 187, § 37; Kendrick v. State, 142 Ala. 43, 39 So. 203; Standard Chem. Company v. Troy, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522.

Defendant and witness Swain express the opinion that their tent shows are harmless or above reproach; yet it is not disclosed by the record the type of singing and dancing and other entertainment given or exhibited by the other named "minstrels" or "troops" or other "tent show" entertainers, who have or may enter or tour the urban, semiurban, or rural sections of the state.

The defendant admits that there have been tent shows in former or recent years, who exhibited in such wise as to be suggestive and immoral in tendency and detrimental and hurtful to the public; but such is not the nature or character of his tent show.

It may be that, in the effort to regulate or discourage the repetition of such exhibitions in rural and semiurban communities, section 16 of the revenue bill was enacted; and it may be that the proviso appended to the enactment was to harmonize with other sections of the General Revenue Law having application to theaters in cities regularly licensed. It is not necessary to this decision that we do more than decide the case in hand under the act and not the exception presented by the proviso. However, there is a reasonable basis for the classification and legislative competency within City Council of Montgomery v. Kelly, 142 Ala. 552, 555, 556, 38 So. 67, 68 (70 L. R. A. 209, 110 Am. St. Rep. 43). It is there said:

"And the courts now recognize the right to so combine the police regulations and the taxing power, as to levy a license tax to discourage and even break up a business. Cooley on Taxation (2d Ed.) p. 20.

"But this applies only to those lines of business which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to public. Tiedeman on Limitations of Police Power, pp. 273, 277, 278; 21 Am. & Eng. Ency. Law (2d Ed.) p. 778." Mut. Film Corp. v. Ind. Comm., 236 U. S. 230, 35 S. Ct. 387, 59 L. Ed. 552.

Such is the effect of Republic I. & S. Co. v. State, 204 Ala. 469, 473, 86 So. 65; Western Union Tel. Co. v. Decatur, 16 Ala. App. 679, 81 So. 199.

If there had been doubt about such business being the subject of police power, that doubt was dispelled by the assertion of such fact and the upholding of an ordinance, under the delegation of the state's power (section 1341, Code of 1907; section 2164, Code of 1923), prohibiting a moving picture show within prescribed limits on Dexter avenue of this city. Dreyfus v. City of Montgomery, 4 Ala. App. 270, 58 So. 730. The general authorities support this view. Oldknow v. City of Atlanta, 9 Ga. App. 594, 71 S. E. 1015; Xydias Amusement Co. v. Houston (Tex. Civ. App.) 185 S. W. 415; State ex rel. Ebert v. Loden, 117 Md. 373, 83 A. 564, 40 L. R. A. (N. S.) 193, 194, Ann. Cas. 1913E, 1300; Block v. Chicago, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219; Mutual Film, etc., v. Ind. Comm., 236 U. S. 233, 35 S. Ct. 387, 59 L. Ed. 552; Mutual Film Co. v. Hodges, 236 U. S. 248, 35 S. Ct. 393, 59 L. Ed. 561; authorities collected in State v. Goldstein, 207 Ala. 569, 575, 93 So. 308; Ex parte Rowe, 4 Ala. App. 254, 59 So. 69; Mehlos v. Milwaukee, 156 Wis. 591, 146 N. W. 882, 51 L. R. A. (N. S.) 1009, Ann. Cas. 1915C, 1102; Duryea v. Wilber, 198 N. Y. 1, 90 N. E. 1140, 27 L. R. A. (N. S.) 357, 19

Ann. Cas. 626; Chicago v. Drake Hotel Co., 274 Ill. 408, 113 N. E. 718, L. R. A. 1917A, 1170; as to power to regulate the teaching of dancing, dancing halls, dancing in public places, Nahser v. Chicago, 271 Ill. 288, 111 N. E. 119, L. R. A. 1916D, 95.

Adverting to Ex parte Sikes, 102 Ala. 173, 175, 178, 15 So. 522, 524, 24 L. R. A. 774, the court held that, under police power, the Legislature could prohibit, and to that end authorized the city of Troy to fix the license tax at a large or any sum—that is, to prohibit entirely or fix the license, as it did, at $2,000. In the Sikes opinion is the observation:

"Certainly municipal officers charged with the 'protection of the lives, health, and property of the citizens, the maintenance of good order and quiet of the community, and the preservation of public morals,' and to this end are intrusted with the police power, are justified in the exercise of all the authority granted when they undertake to regulate business, productive of such results. * * * The peace of a community, the quiet and happiness of the family, the influence of example upon the young and old, the public morals, have no money value."

We entertain no doubt that the business in question was subject to the right application of police power in the body of section 16 of the General Revenue Act. The Legislature had the right to classify, regulate, or prohibit, as it saw fit, such fugitive and temporary exhibitions and entertainments. The tax imposed (Gen. Acts of 1927, p. 156, § 16) is regarded a proper limitation, as a discouragement or restraint upon such fugitive exhibitions or entertainments in urban or rural communities. This is the declared public policy to be found in the body of the enactment. It was an expression of the legislative conception of the necessity for protection of the peace, well being, happiness, and morale of the several sections of the state, against transient or fugitive entertainment "operating temporarily in different places in tents or otherwise."

The proviso to that section does not change the import or administration of the body of that enactment. It only presents, under other sections of the general revenue law, an exception that will stand or fall upon its own merits. It may be said, however, that there is a well-founded distinction between a transient and fugitive entertainment, and that permitted, domiciled in a prescribed location, subject to the supervision of municipalities. Under the police power, the place of exhibition in the municipality was important and justified in distinction and classification in the case of Dreyfus v. City of Montgomery, 4 Ala. App. 270, 58 So. 730. Ex parte Rowe, 4 Ala. App. 254, 258, 59 So. 69, 71. In the latter it is said:

" '* * * Some of the most enticing are reported as "gentlemen games," in playing which the nicest decorum is observed. So the con-

stant tendency to become disorderly may be one of the faults of the small town pool room. It may be vicious and not be loud.' 'A pool hall in a village is apt to degenerate into a trysting place for idlers and a nidus for vice.' Morgan v. State, 64 Neb. 369, 90 N. W. 108. 'Those occupying useful trades and occupations do not occupy the same relation to society as those engaged solely in giving amusement to the public. Keepers of billiard tables are not recognized by the state as exercising a useful occupation. They are subjected to police regulation by the state and by cities under powers granted them by the state.' The City of Tarkio v. Cook, 120 Mo. 1, 25 S. W. 202, 41 Am. St. Rep. 678."

And we have noted that under police power it was declared that the Legislature having the power of prohibition may regulate and safeguard the people by way of the license imposed by the city of Troy in Ex parte Sikes, 102 Ala. 173, 175, 178, 15 So. 522, 24 L. R. A. 774. That is to say, since the Legislature had the constitutional right to prohibit, or to authorize "any community, or municipality, absolutely to prohibit the sale of spirituous liquors," it could authorize such municipality to "fix the price of a license to sell liquor *at any sum*, and, had it seen proper to exercise the right, could have conferred on the mayor and councilmen of Troy, by express provision, the power either to prohibit entirely or fix the price of the license at $2,-000." Ex parte Sikes, 102 Ala. 173, 175, 15 So. 522, 523 (24 L. R. A. 774).

[6] From the foregoing it is not necessary that we further discuss the effect of the evidence. However, it would not be out of place to say that, considering the right exercise of police power in regulation, restraint, and prohibition of the transient show business, within the act, as the same may effect or tend to injure the morals or general welfare of the people, is it not sufficient for the witness to say his show "is clean," or that a given exhibition was "clean when I saw it," or was "clean for" some time in the past? The test must rest upon what such show may be or become in the future as affecting its regulation or prohibition under the police power.

The state's counsel takes the position that the Legislature had the right of due classification as to amusements, and to consider the natural or probable effect of such fugitive entertainments upon the public morals or general welfare of the people of such communities that would be probably served. It is true that Mr. Swain says of such shows that they carry no "gambling devices"; exhibit "no immoral or harmful displays"; the "style of dress" of its actors is that which "prevails in the cities among the best of women," appearing as they do "in full evening gowns, slippers and stockings;" that there is "nothing immoral" or "harmful to the public and has not been for the last ten years"; that he has seen the "other tent shows perform from time to

time, and they are of the same high-class character as my (his) shows."

The Legislature no doubt considered the transient stay of such exhibitions in any community, how its actors may be dressed in the future, the character and quality of its performances given, or that may be given, and exercising its due prerogative draws the conclusion of what effect such shows may have upon public morals or the welfare of its people, young and old, and how questionable tendencies may be discouraged or prevented. In Otis & Gossman v. Parker, 187 U. S. 609, 23 S. Ct. 170, 47 L. Ed. 327, Mr. Justice Holmes said:

"Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all."

To illustrate, under the police power, the government of the United States prevented the transportation of certain films in interstate commerce—this, notwithstanding that promoters of such pugilistic exhibitions may entertain a different view of the result of such exhibitions on the morals or welfare of the people.

Counsel for appellant say:

"It' will be noted from section 15 of the Revenue Act that even street fairs, which, as a matter of common knowledge, do not conduct a very high-class performance, are allowed to have as many as ten exhibits and to occupy a stand for two weeks, paying therefor one $300, which is required to be paid by the transient vaudeville or theatrical show for only one week, while the transient show is putting on a performance entirely different from that of the street fair, and quite similar to that in vaudeville shows and regular theatrical performances."

[7] It may be that the Legislature takes common knowledge of the like effect on public morals that the tent exhibitions in question generally bear to other fugitive exhibitions classed as street fairs; that they likewise move from place to place, where ofttimes the people are without police protection or the fact of publicity and censorship common to cities. This is a sufficient basis on which to rest the classification (Standard Chem. Co. v. City of Troy, 201 Ala. 89, 93, 77 So. 383, L. R. A. 1918C, 522; Cooke, City Clerk, v. Loper, 151 Ala. 546, 551, 44 So. 78; Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620) and to limit to the utmost its evil tendencies (Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205).

The judgment of the lower court is affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

## On Application for Rehearing.

THOMAS, J. The decision in Southern R. Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, on discrimination against a foreign corporation in imposition of additional franchise tax, when no such tax is imposed upon a domestic corporation carrying on precisely the same business, and held to amount to a denial of the equal protection of the laws under the United States Constitution, Fourteenth Amendment, has no application to the classification made in section 16 of the Alabama statute in question.

[8] The equality clause of the Fourteenth Amendment does not deprive the state of its police power to pass statutes for the protection of public health, safety, morals, and that for the general welfare. And in such matters the Legislature has a wide discretion in the nature and extent of such enactments, so long as such acts have an equal and uniform application to all persons similarly situated. When the statute or ordinance does not apply equally and uniformly to all who are similarly situated, the same is unreasonable or has not a substantial relation to the object of the act, and is for such reason offensive to the Fourteenth Amendment to the Constitution of the United States. Dreyfus v. City of Montgomery, supra; Ex parte Sikes, supra; Woco Pep Co. v. City of Montgomery, 213 Ala. 452, 457, 105 So. 214; 12 C. J. pp. 1151, 1157, §§ 881, 894. See, also, Gamble v. City of Montgomery, 147 Ala. 682, 39 So. 353; R. I. & S. Co. v. State, 204 Ala. 469, 86 So. 65; Ex parte Smith, 212 Ala. 262, 264, 102 So. 122.

[9] We have failed to find that the enactment in question offends provision of the Fourteenth Amendment to the Constitution of the United States. The application for rehearing is overruled.

Application overruled.